**C. A. MAY MARINE SUPPLY COMPANY, Plaintiff-Appellee,**

v.

**BRUNSWICK CORPORATION, Defendant-Appellant.**

No. 76–3410.

United States Court of Appeals, Fifth Circuit.

Aug. 19, 1977.

Rehearing Denied Oct. 13, 1977.

G. Bruce Cunningham, Ronald L. Reid, Sidney O. Smith, Jr., Atlanta, Ga., for defendant-appellant.

John C. Butters, Atlanta, Ga., for plaintiff-appellee.

Before GEWIN, RONEY and HILL, Circuit Judges.

PER CURIAM:

We affirm the judgment of the District Court, granting plaintiff's motion for summary judgment on the issue of liability, for the reasons stated in the order of the District Court, a copy of which is attached hereto as an Appendix.

Brunswick Corporation asserts there was no "dealership" within the meaning of Wisconsin Fair Dealership Law § 135.02(2). The point lacks merit. The contract refers to the plaintiff as a "dealer" and the ongoing duties of advertising, repair, warranty work and financial solvency establish the "community of interest" required by the statute.

AFFIRMED.

### APPENDIX

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

C.A. MAY MARINE SUPPLY CO.

CIVIL ACTION

vs.

NO. C76–132A

BRUNSWICK CORPORATION

### ORDER

Plaintiff dealer, a Georgia corporation, has brought this action against defendant manufacturer, a Wisconsin corporation, for the alleged wrongful termination of a dealership arrangement. The case is currently before the court on cross-motions for judgment on the pleadings or, in the alternative, for summary judgment.

The plaintiff has been a dealer for Mercury Marine products, manufactured by the defendant, for approximately twenty years. In August 1975 the defendant notified the plaintiff that it would not renew its sales contract with plaintiff for the sale of Mercury outboard motors, which contract was due to expire at the end of the month. The defendant also informed the plaintiff that if plaintiff filed suit because of the termination, the defendant would also decline to renew all its other sales contracts with plaintiff. The plaintiff brought this action, and all sales contracts were in fact terminated. The plaintiff claims that the defendant violated the Wisconsin Fair Dealership Law, §§ 135.02, *et seq.*, by terminating the dealership without good cause, § 135.03, and without the required ninety-day notice, § 135.04. The defendant admits that it terminated the dealership without proper notice, but claims that the Wisconsin law does not govern this contract.

In support of its claim, plaintiff relies upon paragraph 11 of the dealership contract, entitled "Interpretation", which states:

"This agreement and all of its provisions are to be interpreted and construed according to the laws of the State of Wisconsin. Any provision of this contract which in any wise contravenes or is unenforceable under any law of the nation, of the state, or states in which this agreement is effective shall be deemed separable and not to be part of this agreement."

The defendant contends that the Wisconsin law is not applicable because (1) the above-quoted paragraph does not imply that the contract is to be *governed* by Wisconsin law, (2) the Georgia conflict of law rules require that the laws of the state of performance should govern, (3) even if Wisconsin law did govern the contract, the dealer-

ship law was not meant to apply to non-Wisconsin dealers, and (4) the Wisconsin Fair Dealership Law is unconstitutional.

■ With respect to its first contention, the defendant argues that the words "interpreted and construed according to [Wisconsin law]" are not meant to imply that the rights and duties of the parties under the contract are to be *governed* by Wisconsin law, but rather, that any doubt as to the meaning of ambiguous contract terms is to be resolved "by looking to the law of Wisconsin for the definition of said terms." Viewing the contract as a whole, the court concludes that defendant's interpretation of the clause is incorrect. The word "construe" is defined, as distinguished from "interpret", as "to discover and apply the meaning and intention of [a sentence or clause] with reference to a particular state of affairs." Webster's New International Dictionary, 2d Ed. [1940]. Black's defines "construction" as:

"The process, or the art, of determining the sense, real meaning, or proper explanation of obscure or ambiguous terms or provisions in a statute, written instrument, or oral agreement, or the application of such subject to the case in question, by reasoning in the light derived from extraneous connected circumstances or laws or writings bearing upon the same or a connected matter, or by seeking and applying the probable aim and purpose of the provision. * * *

"This term is properly distinguished from *interpretation*, although the two are often used synonymously. In strictness, interpretation is limited to exploring the written text, while construction goes beyond and may call in the aid of extrinsic considerations, as above indicated." Black's Law Dictionary, 4th Ed. (1957).

Both these definitions imply that the terms of the written contract are to be understood only through reference to an outside authority, that authority in this case being the law of Wisconsin. The Seventh Circuit Court of Appeals apparently came to a similar conclusion in *Tele-Controls, Inc. v. Ford Industries, Inc.*, 388 F.2d 48 (7th Cir. 1967), where the contract stipulated that it was to be "interpreted and construed according to the laws of the State of Oregon." The contract had given either party the right to terminate the sales agreement at any time, with or without cause, by giving the other party thirty days' notice. The court nonetheless held that Oregon law required that the termination he in good faith, and therefore read such a requirement into the contract. The court reasoned that "The parties' intention to be governed by Oregon law should be honored." *See also United States Ore Corp. v. Commercial Transport Corp.*, 369 F.Supp. 792 (E.D.La.1974), in which the court allowed a subsequent modification of a contract because such modification was recognized under New York law and because the original contract stipulated that it "shall be construed in accordance with the laws of the State of New York."

■ The court is aware that the term "construe in accordance with" is technically distinguishable from the term "governed by", but doubts that such a fine distinction was intended by the parties. In this regard, the court can conceive of few circumstances where resort must be had to state law to determine the meaning of ambiguous terms, but not to impose state substantive law upon the parties. It seems apparent that, by including the "interpretation and construction" clause in the contract, and by specifically reciting that the contract was entered into in Wisconsin (both of which terms were part of the defendant's form contract), the defendant hoped to insure that Wisconsin law would govern its relations with all its dealers, wherever they may be situated around the country. In any event, it is a cardinal rule of construction that ambiguous terms of a contract are to be interpreted against the party which drafted them, *see, e. g.*, Ga.Code Ann. § 20–704(5). In so interpreting this contractual provision, the court finds itself in agreement with the reasoning of the Georgia Supreme Court which was faced with a contract that stipulated "that the contract embodied in this mortgage, and the note secured hereby, shall, in all respects, be

construed according to the laws of Georgia."

"We . . . have little doubt that the parties to this contract distinctly meant by this very stipulation that the contract as to interest and every other essential feature and particular, should be not only construed but enforced according to the laws of the State where it was made. In the case before us, we are quite sure that the parties to the note and mortgage under consideration meant and intended that they should be in all respects understood and *carried out* as Georgia contracts, and enforced under Georgia laws. And, after all, is it not plain and simple justice to give this effect and meaning to these words? To do otherwise, it seems to us, would defeat the expressed wishes and intention of these parties." *New England Mortgage Security Co. v. McLaughlin*, 87 Ga. 1, 13 S.E. 81 (1891).[1]

The defendant nonetheless argues that the interpretation and construction clause could not have been intended to require that Wisconsin law govern the rights of the parties because paragraph eight of the contract, dealing with termination of the dealership, is inconsistent with the Wisconsin Fair Dealership Law. Thus, reasons the defendant, Wisconsin law could not have been intended to apply. Such reasoning was found persuasive in *Boatland, Inc. v. Brunswick Corp.*, C.A. No. C75–298–NA–CV (M.D.Tenn.1975), in which the court was faced with the identical form contract. This court must respectfully decline to follow *Boatland*. The defendant may very well have believed that the Fair Dealership Law would not apply to this contract, but it is equally clear to the court that the defendant wished to have all other rights and obligations governed by Wisconsin law. The inconsistency between the dealership law and paragraph eight can be explained by the fact that the defendant did not

believe that, as a matter of law, the dealership law could be applied to protect non-Wisconsin dealers, *see* affidavit of Roy T. Montgomery, Division Counsel for defendant. The defendant asserted that same position in the *Boatland* case and asserts it again here, *see infra*.

■ It might also be argued that it was the intention of the parties to be governed by Wisconsin law, *except for* the Wisconsin Fair Dealership Law, since the specific provisions of paragraph eight, dealing with termination, could be construed to control the more general wording of the interpretation clause. Such an interpretation is not allowed, however, under the explicit wording of paragraph eleven, which stipulates that any provision which contravenes the law of the state in which it is effective shall be deemed not part of the agreement. Thus, the intention of the parties to be governed by Wisconsin law controls over paragraph eight.

■ The defendant further argues that, even if Wisconsin law must govern the contract, plaintiff still is not protected by the dealership law because it was not the intention of the Wisconsin legislature to extend protection to out-of-state dealers. The argument has surface appeal, but is decidedly a red herring. Obviously, the legislature passed the law to protect Wisconsin dealers, and had no concern for protecting the termination rights of dealers such as plaintiff. But that does not mean that parties, one or both of which have some reasonable contact with the State of Wisconsin, may not agree to clothe themselves with the rights and duties of citizens of that state when determining their respective rights under their contract, *see Lauritzen v. Larsen*, 345 U.S. 571, 588–9, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), 6A *Corbin on Contracts*, § 1446 (1962). *Cf. Sheerin v. Steele*, 240 F.2d 797, 799 (6th Cir. 1957), *cert. den.* 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760 (1957). No state

---

**1.** The Georgia courts' position on this issue is, of course, only persuasive and not binding, authority. Whatever else the interpretation clause of this contract means, it certainly requires this court to look to Wisconsin law to determine the actual meaning of the clause itself. However, neither party has presented the court with any Wisconsin authority on point, and the court has found none.

intends to govern the transactions of citizens of other states when it establishes laws governing contractual relations between parties. When, however, parties to a contract have contact with more than one state, the parties are expected, and encouraged, to stipulate which state's substantive law will govern. Obviously, when such agreement occurs, both parties are bound as well as protected by the state law stipulated. The defendant seems to believe that it may receive the benefits of Wisconsin law, but that plaintiff may not, because it is not a Wisconsin corporation. It suffices to point out that such a notion would effectively emasculate all contractual choice of law provisions, and would be clearly inconsistent with the principles enunciated in *Lauritzen.*

Finally, the defendant argues that the Wisconsin Fair Dealership Law is unconstitutional in that it is vague, denies the defendant property without due process of law, violates the commerce clause, and violates the supremacy clause by unduly interfering with federal trademark laws. The court finds these claims to be patently frivolous. The Fair Dealership Law allows dealers to bring an action against a manufacturer who terminates a dealership "without good cause." That term is adequately defined in the Act,[2] and such definition gives the defendant ample notice of when it will be found to have violated the Act. Moreover, the statute does not violate the commerce clause when applied to dealerships outside Wisconsin; such application can only be effected by the contractual consent of the parties, as illustrated in the instant case. Finally, the defendant's trademark rights under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, are in no way interfered with by the statute's definition of "dealership", which includes the right to use a trade name, trademark, or other commercial symbol.[3] The statute is intended only to regulate the contractual relations of the manufacturer and dealer; it is not intended to interfere, nor does it in fact interfere, with the defendant's registration rights under the Lanham Act.

For the foregoing reasons, the court concludes that the Wisconsin Fair Dealership Law applies to the contract in question. Inasmuch as the defendant has conceded that it has not complied with the requirements of the statute, the plaintiff's motion for summary judgment on the issue of liability is hereby GRANTED, Rule 56(c), Fed. R.Civ.P. The clerk is DIRECTED to set this matter down on the trial calendar for a determination of the damages suffered by plaintiff and for consideration of whether injunctive relief is appropriate.

So ORDERED, this <u>30th</u> day of June, 1976.

(s) <u>Newell Edenfield</u>
NEWELL EDENFIELD
United States District Judge

---

2. Section 135.02 provides:

"(6) 'Good cause' means:

"(a) Failure by a dealer to comply substantially with essential and reasonable requirements imposed upon him by the grantor, or sought to be imposed by the grantor, which requirements are not discriminatory as compared with requirements imposed on other similarly situated dealers either by their terms or in the manner of their enforcement; or

"(b) Bad faith by the dealer in carrying out the terms of the dealership."

3. "(2) 'Dealership' means a contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise."