**In the Matter of Melba M. ROYAL, Debtor.**

**Bankruptcy No. 686–00327.**

United States Bankruptcy Court, S.D. Georgia, Statesboro Division.

April 29, 1987.

## ORDER ON MOTION TO DISBURSE PROCEEDS

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

First Bulloch Bank and Trust Company ("First Bulloch") filed a motion to require disbursement of the proceeds of sale of certain real estate of the above-named Debtor. The property was sold free and clear of liens, with valid liens attaching to the proceeds by order of this Court dated March 13, 1987. First Bulloch alleges in its motion, and Debtor concedes, that the debt secured by the real estate in question far exceeds the available funds of $66,000.00 which were realized from the sale. The Internal Revenue Service has a recorded lien which attached to the proceeds of the sale. However, the Internal Revenue Service, through counsel, acknowledges the superior position of First Bulloch and consents to First Bulloch receiving the entire proceeds.

For her part, the Debtor consents that the proceeds be delivered to First Bulloch but argues that the proceeds should be applied entirely to the debt which she personally owes First Bulloch. First Bulloch

wishes, however, to apply the entire proceeds to a debt of Royal Equipment Company to First Bulloch, which Debtor has not personally guaranteed, but for which she had pledged this property as additional security.

### FINDINGS OF FACT

1) Royal Equipment Company is a corporation, previously a Chapter 11 Debtor in this Court, with a large outstanding indebtedness to First Bulloch.

2) Melba Royal, the Debtor here, was an employee, officer, and shareholder in Royal Equipment Company. Her husband, Charles Royal, had personally guaranteed much if not all of the Royal Equipment Company debt to First Bulloch and had pledged certain of his assets as security for said debt. Melba Royal had pledged certain assets to First Bulloch to secure the Royal Equipment Company loan but did not execute a personal guaranty.

3) The property sold pursuant to the March 13, 1987 Order of this Court consisted of 71.2 acres in Bulloch County known as the McClelland Farm.

4) Melba Royal individually is indebted to First Bulloch in the amount of slightly more than $87,000.00 as of December 31, 1986, with per diem interest of $30.91, this being the balance of 3 notes executed by Mrs. Royal in favor of First Bulloch and shown as Exhibits B, C, and D to First Bulloch's Motion to Disburse. First Bulloch claims an additional 15% of principal and interest due on said notes as attorney's fees. However, there was no evidence that the statutory notice of intent to collect said fees was ever given as required by O.C.G.A. 13-1-11.

5) On January 3, 1973, Melba and Charles Royal executed a deed to secure debt to First Bulloch conveying the 71.2 acre tract to secure a debt of $6,768.49 "as well as to secure all other present or future demands of any and all kinds of the holder hereof against the undersigned ... whether absolute or contingent ... including any endorsement or guaranty made by the undersigned". (Exhibit E). The debt deed makes no provision for priorities in the application of proceeds of any sale of the property. The debt deed was recorded in Book 340, pages 93–94 in Bulloch County, Georgia.

6) Likewise on January 3, 1973, Charles and Melba Royal executed separate "Owners Consent to Pledge of Collateral" which recited that in order to induce First Bulloch to extend credit to Royal Equipment Company each of them authorized *"Royal"* (emphasis added) to grant to First Bulloch a deed to secure debt on the 71.2 acre tract. (Exhibits G and H).

7) Mrs. Royal testified that it was her intent that her direct, personal obligations would be paid from the proceeds of any collateral held by First Bulloch prior to the time First Bulloch would apply said proceeds to the obligations of Royal Equipment Company.

8) First Bulloch did not introduce evidence as to its concept or expectations regarding the application of proceeds. The documents introduced into evidence are silent as to the priorities of application of proceeds. The documents in question are pre-printed First Bulloch form agreements.

### CONCLUSIONS OF LAW

The 71.2 acre tract or the $66,000.00 proceeds from it constitute property of the estate of this debtor pursuant to 11 U.S.C. Section 541.

The application of proceeds from the sale would ordinarily be a matter of state contract law. Under state law, were the contract terms expressly and clearly set forth they would be enforced. In the absence of express contractual provisions the primary rule of construction is to give effect to the intent of the parties. O.C.G.A. Section 13-2-3. In this case, the intent of First Bulloch is unknown—while the intent of Mrs. Royal was that these proceeds be applied to her personal debts first. If there were an ambiguity on this point in the contractual provisions, the ambiguity would be construed against First Bulloch, the drafter of the documents. O.C.G.A. Section 13-2-2(5). *May Marine Supply v. Brunswick Corp.*, 557 F.2d 1163

(5th Cir., 1977). However, since the only expression of intent favors Debtor's position, that intent should perhaps be given effect even though the testimony was to some extent self-serving.

■ I further conclude that First Bulloch is bound by the obligation of good faith which is implied in every contract in Georgia to apply the proceeds in the manner proposed by Mrs. Royal. O.C.G.A. 13-4-20. In *Kleiner v. First National Bank,* 581 F.Supp. 955 (N.D.Ga., 1984) the court collected authorities which stand generally for the proposition that when one party has the power to unilaterally set terms in a contract, the discretion to do so is limited by a requirement that the creditor's action uphold both the spirit as well as the letter of the agreement. *Id.* at 960 n. 5. As applied to the facts in this case, I adopt such a rule and hold that a lender must apply proceeds of collateral first to the primary obligations secured by that collateral. This upholds not only the Debtor's expectations as testified to in this case but also the reasonable expectations of any borrower who pledges collateral to secure his or her direct obligations as well as to secure the obligations of other parties.

■ I further conclude, apart from the State law analysis that the same result is compelled under bankruptcy principals. It is axiomatic that the purpose of bankruptcy is to administer the non-exempt assets of a debtor in the manner best calculated to satisfy part or all of that debtor's obligations to creditors. These proceeds, as previously noted, constitute property of this Debtor's estate, available for distribution to pay her debts. While she consented that this property serve as additional collateral for debts of a family corporation,[1] she did not personally guarantee that corporation's debt. Therefore, as to the debt of Royal Equipment, First Bulloch is not a creditor in this case. It would destroy the statutory scheme established by Congress to take property from this Debtor's estate, prior to the time that all debts are paid, and apply it to the debts of an entirely separate entity. For this reason, I would conclude that an adherence to the underlying rationale of the Bankruptcy Code prohibits First Bulloch from applying these proceeds other than to the direct obligations of Mrs. Royal. See generally 11 U.S.C. § 554; § 510(c); § 726.

Section 554 permits abandonment of property of the estate, which these proceeds represent, only if the property is "burdensome" or of "inconsequential value". Clearly, these funds are of considerable value to the estate, and to apply them to debt on which Mrs. Royal is not obligat-

---

1. As an aside, I am not convinced that the documents introduced by First Bulloch result in First Bulloch holding the subject property as collateral for the Royal Equipment Company debt. The "Owners Consent" (Exhibit G) does not appear to fit this transaction. Rather, it appears to be intended for use by co-owners of property one of whom is not personally obligated to the lender. By this consent Mrs. Royal authorized Royal Equipment Company to pledge this property to First Bulloch. However, Royal Equipment Company did not own any interest in this property. Nor, pursuant to the consent, did Royal execute any such pledge to First Bulloch of this land. At best, therefore, this consent is irrelevant to the matter before me. Thus, First Bulloch's right to apply these proceeds to the Royal Equipment Company debt arises solely from the deed to secure debt. Its terms permit other debts of "the undersigned" to be secured by the property pledged. Mrs. Royal owes no debt to First Bulloch other than the three notes in evidence. Royal Equipment Company owes First Bulloch several hundred thousand dollars and Charles Royal has person-

ally guaranteed that debt. Whether Royal Equipment Company debt, under these facts, is a debt of "the undersigned" when both Mr. and Mrs. Royal were "the undersigned" is very much in doubt in my mind. O.C.G.A. 44-14-1(b); See *Willis v. Rabun County Bank* 249 Ga. 493, 291 S.E.2d 715 (1982) and cases cited therein. *Contra, Fleming v. First American Bank & Trust Co.,* 171 Ga.App. 295, 319 S.E.2d 119 (1984). Under existing authority in Georgia if the term "party of the first part" or "grantor" appeared where "the undersigned" appears, First Bulloch's contentions would be on shaky footing. Since the term "the undersigned" is quite similar to "grantor" and is not defined as including either or both of the co-makers, it seems reasonably likely that Georgia courts would hold the dragnet clause inapplicable to the Royal Equipment Company debt. However, since Mrs. Royal acknowledged that the dragnet clause applies to the Royal Equipment Company debt and contests only First Bulloch's right to apply these proceeds first to that debt, I will not attempt to rule in this area where clear Georgia precedent does not exist.

ed ahead of debts owed by her estate would amount to an impermissable abandonment. Section 510(c) permits equitable subordination of one allowed claim to another. Surely, if the Court can subordinate such allowed claims, it is permissable if not mandatory to subordinate that portion of the First Bulloch debt owed by Royal Equipment [which is not an allowed claim in this case, see 11 U.S.C. § 502; Bankruptcy Rules 3001(f); 3003] to that portion of the First Bulloch debt owed by Mrs. Royal which *is* an allowed claim in this case. Finally, Section 726 establishes that the priority of distribution of property of the estate is dependent upon the recipient's status as a holder of a claim against the estate. After satisfaction of all claims against the estate, Section 726(a)(6) provides for disbursement of any balance to the Debtor, in whose hands it would presumably be subject to any lien held by First Bulloch on Debtor's property not satisfied by previous distributions.

■ Clearly these sections support a holding that Mrs. Royal is entitled to have her personal debt extinguished prior to any application of proceeds to the Royal debt. This result is also suggested by the equitable remedy of marshalling of assets, although under that doctrine, as between two creditors, the Court can compel one to look first to assets over which it alone holds a lien prior to proceeding to liquidate assets on which there are junior liens. See *In re Jack Green's Fashions*, 597 F.2d 130 (8th Cir., 1979) where the Circuit Court treated the bankruptcy estate as if it were a junior lienholder so as to force the "senior" lienholder to proceed against property of a non-debtor *prior* to proceeding against property of the bankruptcy estate. Although the Circuit Court did not expressly rely upon it, the holding is supported by 11 U.S.C. Section 544 which makes the trustee or debtor-in-possession a hypothetical lien creditor over assets of the estate as of the date of filing, and thus fills the role of a junior lienholder. Since in the Royal case there is no evidence that all the business assets of Royal Equipment have been applied to the debt, the asset marshalling concept likewise supports a result applying

proceeds of the sale of Mrs. Royal's property to Mrs. Royal's individual debt first.

Based on an analysis of the contract documents, the expressed intent of one of the contracting parties, and most importantly because it will uphold the statutory fabric of the Bankruptcy Code in maximizing dividends to creditors in this case, I conclude that the proceeds of the sale of the McClelland Farm must be applied first to the individual, personal obligations of the Debtor, Melba Royal.

■ In determining the amount due on each note, for the purposes of this Motion First Bulloch is not entitled to accrue attorney's fees since there is no evidence of statutory notice having been provided prior to bankruptcy (O.C.G.A. 13–1–11) and since there is no equity in the property on which First Bulloch's secured claim would be permitted to accrue interest or attorney's fees. 11 U.S.C. Section 506(b).

## ORDER

Based upon the foregoing Findings of Fact and Conclusions of Law, IT IS ORDERED that:

1) The sum of $66,000.00 deposited in the Registry of this Court on March 20, 1987, together with accrued interest, be paid to First Bulloch Bank and Trust Company.

2) First Bulloch Bank and Trust Company shall apply said sum of money (a) first to the principal and accrued interest on the note dated December 13, 1985, marked as Exhibit "C"; (b) second to the principal and all accrued interest on the note dated December 13, 1985, marked as Exhibit "B"; and (c) third to the principal and all accrued interest on the note dated December 13, 1985, marked as Exhibit "D".

3) First Bulloch Bank and Trust Company shall within ten (10) days of receipt of said funds file with the Court and serve on Debtor and Debtor's counsel an analysis of the application of said funds and the balance due First Bul-

loch Bank and Trust Company, on any of said notes, if any.

4) Thereafter, any remaining dispute between the parties as to the claim of First Bulloch Bank and Trust Company shall be considered only on application of a party.

SO ORDERED.