2 F.3d 1156
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FRED BRIGGS DISTRIBUTING COMPANY, INC., Plaintiff-Appellant,
v.
CALIFORNIA COOLER, INC.; Brown-Forman Corporation,
Defendants-Appellees.
 No. 92-35016.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 6, 1993.*
Decided Aug. 11, 1993.
 
 1
 Before: BEEZER and HALL, Circuit Judges, and CONTI, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Fred Briggs Distributing Company ("Briggs") appeals the district court's grant of summary judgment in favor of California Cooler, Inc. ("California Cooler") and Brown-Forman Corporation ("Brown-Forman") in Briggs' contract termination action. The district court had jurisdiction pursuant to 28 U.S.C. Sec. 2201. This court has jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 4
 * Briggs' action is based on the claim that Brown-Forman terminated the distributorship agreement between the parties without cause in violation of the California Franchise Relations Act ("Franchise Act"), Cal.Bus. & Prof.Code Secs. 20000-20043 (West 1987). In granting summary judgment, the district court determined that the Franchise Act does not apply in this case. Briggs challenges the district court's conclusion.
 
 
 5
 The Franchise Act contains both jurisdictional and definitional limitations. Only franchisees that are domiciled in California or franchised businesses that have been operated in the state are entitled to coverage. Cal.Bus. & Prof.Code Sec. 20015. Moreover, in order to qualify as a franchisee, a business must pay a franchise fee. Cal.Bus. & Prof.Code Sec. 20001(c).
 
 
 6
 Briggs is unable to satisfy these requirements, but argues that the Franchise Act applies nonetheless. It contends that the choice of law provision in the distributorship agreement, which stipulates that California law applies, overrides these limitations. Alternatively, it argues that the choice of laws provision does not incorporate the jurisdictional and definitional limitations because they are not substantive in nature.
 
 
 7
 We find both claims unpersuasive. The domicile requirement is an express geographic limitation on the applicability of the Franchise Act. When a law contains geographical limitations as to its application, courts will not apply it to parties falling outside those limitations even if the parties stipulate that the law should apply. See Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc., 892 F.2d 355, 358 (4th Cir.1989), cert. denied, 497 U.S. 1005 (1990) (refusing to apply New York regulatory schemes through choice of law clause because plaintiff did not fall within geographical limitations of those schemes); Bimel-Walroth Co. v. Raytheon Co., 796 F.2d 840, 842-43 (6th Cir.1986) (refusing to apply the Wisconsin Fair Dealership Law through a choice of law clause because plaintiff was not grantee of a "dealership situated in the state").[1] Thus, we hold that the domicile requirement applies in the instant case. Since Briggs is unable to satisfy this requirement it can not seek relief under the Franchise Act.
 
 
 8
 For the same reasons, we decline to hold that the definitional limitations in the Franchise Act do not apply. We are bound by the limitations that a state legislature places on the scope of its laws. Because Briggs did not pay a franchise fee it does not qualify as a franchise as defined by Cal.Bus. & Prof.Code Sec. 20001(c). For this additional reason, Briggs can not seek relief under the Franchise Act.
 
 
 9
 Briggs argues that if jurisdictional and definitional limitations are enforced, all contractual choice of law provisions will be rendered ineffectual. This is simply untrue. Laws which do not have these provisions can still be imported, and laws containing jurisdictional and definitional limitations will still govern parties falling within those limitations. Although it cannot give effect to the Franchise Act, the choice of law provision in Briggs' distribution contract brings into the contract all other relevant California laws that either lack jurisdictional and definitional limitations or have limitations which do not exclude Briggs.
 
 
 10
 In addition to arguing that choice of law clauses can simply override jurisdictional and definitional provisions in a statute, Briggs contends that choice of law clauses only incorporate a forum's substantive law. Because the jurisdictional and definitional limitations in the Franchise Act are not substantive in nature, Briggs concludes that they do not apply in the instant case.
 
 
 11
 Briggs cites three cases in which courts have refused to import certain rules through choice of law provisions because those rules were not part of the forum's substantive law. See Siegelman v. Cunard White Star, 221 F.2d 189, 194 (2nd Cir.1955) (choice of law does not stipulate English conflict of laws rules); Sears, Roebuck & Co. v. Enco Assoc., Inc., 401 N.Y.S.2d 767, 772 (N.Y.1977) (choice of law provision does not stipulate Michigan statute of limitations); Gambar Enterprises v. Kelly Services, 418 N.Y.S.2d 818, 822 (N.Y.App.Div.1979) (choice of law provision does not stipulate Michigan's standards for evaluating failure to state a cause of action). These cases are inapposite because they involve independent procedural rules affecting how courts apply and interpret the substantive laws governing a dispute. The jurisdictional and definitional limitations are not procedural rules. Rather, they are integral parts of the Franchise Act. Specifically, they help establish the boundaries of the Franchise Act's reach. By arguing that these requirements should not be given effect, Briggs is not asking us to suppress a separate procedural rule, but rather to sever a provision from a statute. None of the cases it cites supports such an approach.
 
 
 12
 Indeed, the substantive character of these limitations can be fully appreciated by considering the consequences of disregarding them as Briggs suggests. For instance, if the definitional provisions were read out of the Franchise Act, various out-of-state businesses which do not qualify as franchises could nevertheless claim the Act's protection as long as they stipulate that California law applies. This would drastically alter the Act's complexion and grossly violate the intentions of the legislature. Moreover, since Californian businesses would still be bound by these definitions (no one argues that Californians can selectively exempt themselves from portions of their own laws), non-franchise businesses located outside California would enjoy benefits from the Act that are denied their Californian counterparts.
 
 
 13
 Even more problematic is that the Franchise Act would not be the only law distorted in this fashion. The logical conclusion of Briggs' argument is that the definitional aspects of all laws are waived by contractual choice of law provisions. That proposition, if given effect, would obliterate any control legislatures could exercise in defining the limits of their laws.
 
 
 14
 We therefore reject the claim that the jurisdictional and definitional limitations in the Franchise Act are not substantive in nature. Instead, we hold that these provisions apply in the instant case and bar Briggs from seeking relief under the Franchise Act.
 
 II
 
 15
 Briggs contends that the distribution agreement is unconscionable. We review de novo the district court's determination of whether a contract is unconscionable. Arcwel Marine, Inc. v. Southwest Marine, Inc., 816 F.2d 468, 470 (9th Cir.1987).
 
 
 16
 In order to be entitled to relief under California law, Briggs must establish that the contract is unconscionable in both a procedural and a substantive sense. Premier Wine & Spirits of South Dakota, Inc. v. E. & J. Gallo Winery, 644 F.Supp. 1431, 1440 (E.D.Cal.1986); A & M Produce Co. v. FMC Corp., 186 Cal.Rptr. 114, 121-22 (Cal.App.1982). Procedural unconscionability consists of an absence of a meaningful choice by one party, while substantive unconscionability occurs when the contract reallocates the risks of the bargain in an objectively unreasonable or unexpected manner. Premier, 644 F.Supp. at 1440.
 
 
 17
 Briggs' claim fails because it does not present any facts suggesting that the contract term was unconscionable in a procedural sense. The procedural element of unconscionability consists of two components: oppression and surprise. A & M Produce, 186 Cal.Rptr. at 121-22. Briggs does not establish that it suffered oppression in the negotiation process, whereby an inequality of bargaining power resulted in "no real negotiation and an absence of meaningful choice." Id. Nor does Briggs claim that it was surprised by terms "hidden in a prolix printed form." Id. Finding no indication of either oppression or surprise, the district court properly denied Briggs' unconscionability claim.
 
 
 18
 The agreement is also not substantively unconscionable. The risks of the bargain were reasonably allocated because both parties had the exact same right to terminate the distributorship. See Premier, 644 F.Supp. at 1440; Gilchrist Machinery Co. v. Komatsu America Corp., 601 F.Supp. 1192, 1201 (S.D.Miss.1984). Moreover, the termination provision offered Briggs significant benefits. Although Briggs risked losing its initial investment in the event of early termination, it also enjoyed the option of cancelling the agreement in order to secure a better distributorship with another manufacturer. See Corenswet, Inc. v. Amana Refrigeration, Inc., 594 F.2d 129, 138-39 (5th Cir.1979). We cannot say, therefore, that the contract terms are so one-sided as to be unconscionable.
 
 III
 
 19
 Briggs argues that the distribution agreement is a "take it or leave it contract." Assuming that Briggs is correct in its characterization (Brown-Forman does not dispute this), that fact does not invalidate the contract. Adhesion contracts are fully enforceable provided that they are not unconscionable and do not fall outside the reasonable expectations of the weaker or adhering party. Graham v. Scissor-Tail, Inc., 171 Cal.Rptr. 604, 612 (Cal.1981).
 
 
 20
 We have already established that the distributorship agreement was not unconscionable. In addition, we hold that the contract does not fall short of any expectations that Briggs could reasonably have entertained. The agreement in this case was a standardized industry contract. Briggs has distributed alcoholic beverages for over 50 years and enters into contracts of this kind routinely. Under these circumstances, we find that Briggs should have been familiar with the type of termination provision at issue. See Gilchrist, 601 F.Supp. at 1192 (90 day termination clause not contrary to the reasonable expectations of plaintiff because he had been involved with several franchise agreements in the past and should be knowledgeable about the standard termination clause).
 
 IV
 
 21
 Briggs also contends that Brown-Forman should not be allowed to deny that the distribution agreement is a franchise agreement because it referred to the same contract as a franchise agreement in Solman Distributors, Inc. v. Brown-Forman Corp., CV No. 87-0276 B (D.Me. Mar. 9, 1988). Those representations, however, have no legal significance in this case. The court in Solman did not decide whether the agreement established a franchise, since that was not at issue in Solman. Moreover, Briggs does not present a valid estoppel claim, since it does not assert that it acted in reliance on any of Brown-Forman's statements. Thus, Solman is irrelevant to our discussion.
 
 V
 
 22
 Finally, Briggs argues that the district court improperly granted summary judgment on its third and fourth counts alleging bad faith and seeking recoupment. The district court held that pursuant to Local Rule 220-1, Briggs consented to summary judgment on these issues by failing to respond to the defendants' motion for summary judgment. We recognize a district court's broad discretion when interpreting its local rules. Miranda v. Southern Pacific Transp. Co., 710 F.2d 516, 521 (9th Cir.1983). Indeed, "[o]nly in rare cases will we question the exercise of discretion in connection with the application of local rules." United States v. Warren, 601 F.2d 471, 474 (9th Cir.1979). Briggs does not even attempt to explain why application of Local Rule 220-1 was erroneous. Thus, we refuse to question the district court's exercise of discretion in applying Local Rule 220-1 in the instant case.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Hon. Samuel Conti, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 To support its contention that limits on extraterritorial application should be disregarded when stipulating law through contractual choice of law provisions, Briggs cites C.A. May Marine Supply Co. v. Brunswick Corp., 557 F.2d 1163 (5th Cir.1977). The court in that case ruled that the Wisconsin Fair Dealership Law could be applied extraterritorially even though the legislature had not expressly allowed such application. Noting that legislatures never give explicit permission for laws to be applied extraterritorially, the court reasoned that requiring such permission would emasculate all choice of law clauses. Id. at 1166-67. C.A. May is inapposite because the legislature in that case was silent as to the extraterritorial use of the Fair Dealership Law, whereas the Franchise Act contains explicit limits on such use. Moreover, after the Wisconsin legislature amended the Fair Dealership Law to include such limitations, several courts concluded that extraterritorial application of that law was no longer permitted. See Peugeot, 892 F.2d at 358 n. 8; Bimel-Walroth, 796 F.2d at 842-43; Highway Equipment Co. v. Caterpillar Inc., 908 F.2d 60, 63-64 (6th Cir.1990)