The **BIMEL–WALROTH CO.,**
Plaintiff-Appellee,
Cross-Appellant,

v.

**RAYTHEON CO., et al., Defendants,**

**Speed Queen Co., Defendant-Appellant,**
Cross-Appellee.

Nos. 85–3409, 85–3425.

United States Court of Appeals,
Sixth Circuit.

Argued April 14, 1986.

Decided July 15, 1986.

Stephen J. Holtman (argued), Simmons, Perrine, Albright & Ellwood, Cedar Rapids,

Iowa, Lawrence R. Elleman, Dinsmore & Shohl, Cincinnati, Ohio, for defendant-appellant, cross-appellee.

W. Joseph Strapp, Columbus, Ohio, for plaintiff-appellee, cross-appellant.

Before KRUPANSKY and WELLFORD, Circuit Judges and PECK, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Speed Queen, defendant, a Delaware corporation, manufactured home laundry appliances in Ripon, Wisconsin, and sold them to Bimel-Walroth Company, plaintiff, a Speed Queen appliance distributor in Cincinnati. The plaintiff distributorship operated in 1980 under an agreement with defendant, which during the previous year had been acquired by Raytheon Company. Raytheon had been in the home appliance business operating through its Amana division. Raytheon decided as a matter of basic corporate policy in 1980 to combine the Amana and Speed Queen distributors throughout the country. Accordingly, in December 1980 defendant notified Bimel-Walroth under a ten day notice provision in their agreement that it would terminate their nearly ten year old business arrangement in order to transfer distributorship of Speed Queen brand products to the Cincinnati Amana distributor.

Plaintiff sued claiming a violation of the ninety day notice requirement of the Wisconsin Fair Dealership Law (the WFDL), Wis.Stat. § 135.04 [1], which plaintiff claimed to be applicable because of the following clause in its distributorship agreement:

XIII. AGREEMENT SUBJECT TO THE LAWS OF THE STATE OF WISCONSIN: This Agreement shall be deemed to have been executed and entered into at Ripon, Wisconsin, and shall be construed, enforced and performed in accordance with the laws of the State of Wisconsin.

Plaintiff also claimed antitrust violations, breach of fiduciary duty, tortious interference with a business relationship and fraud in addition to the WFDL contention.[2] Claims made by Bimel-Walroth against Raytheon and Amana were dismissed, and no challenge is here made respecting these actions. Defendant's motion for summary judgment on remaining claims was overruled, and these causes of action were presented before a jury. At the close of trial the district court directed a verdict on a promissory estoppel claim in favor of defendant. On the claim respecting application of the WFDL, however, the court directed a verdict in favor of Bimel-Walroth. With respect to the claim of fraud, the jury also found that defendant had good cause to terminate the agreement. Damages of $19,077.00 were awarded to plaintiff pursuant to application of the WFDL and defendant's failure to observe the ninety day notice provision. Plaintiff appeals from the jury verdict finding of good cause termination under the meaning of the WFDL, claiming an erroneous instruction. Defendant appeals from the directed verdict finding the WFDL applicable to plaintiff, a nonresident of Wisconsin.

The basic question before this court is whether under the circumstances the WFDL is applicable, which would require Speed Queen to give plaintiff a ninety day notice before the agreement could be terminated. The district court ruled that the WFDL was applicable. We now reverse.

## I.

The essence of plaintiff's argument, accepted by the district court, is set out in a few sentences in its brief:

The location of the dealer [Bimel-Walroth] is not a factor in determining whether WFDL applies. Rather the applicability of the WFDL depends on the situs of the dealership agreement.

1. [A] grantor shall provide a dealer at least 90 days' prior written notice of termination.... Wis.Stat. § 135.04.

2. Plaintiff dropped its Sherman Act and Ohio Valentine Act claims as well as the asserted

breach of fiduciary duty. The trial court ruled in favor of defendant on several other claims, which are not now before us on this appeal.

"Dealership" is not defined in the WFDL to mean the facility operated by the dealer. Rather "dealership" is defined to mean a "contract or agreement" between the manufacturer and the dealer. W.S.A. § 135.02(2).[3]

The real dispute in this case concerns the proper meaning within the context of the WFDL of the phrase "dealership situated in this state." The district court did not find that the context of this phrase created any ambiguity. It found the phrase applied to the "dealership" involving the parties to this dispute. The court cited *Capitol Consolidated, Inc. v. Speed Queen*, No. IP 80–1092–C (S.D.Ind. Oct. 17, 1984), in support of this conclusion, but also noted *Darche Associates v. Beatrice Foods Co.*, 538 F.Supp. 429 (D.N.J.1981), *aff'd*, 676 F.2d 685 (3d Cir.1982), to the contrary. The district court observed that the Wisconsin Supreme Court had not ruled on the question. It did not have the benefit of a later decision of the Wisconsin Court of Appeals, *Swan Sales Corp. v. Jos. Schlitz Brewing Co.*, 126 Wis.2d 16, 374 N.W.2d 640 (Wis.Ct.App.1985), which has interpreted the law in question.[4]

The parties concede that Wisconsin substantive law applies to this case by virtue of the clause in the contract aforementioned. Wisconsin rules of statutory construction therefore apply. *See, e.g., Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084 (6th Cir.1981). We believe that the phrase "situated in this state" is facially unambiguous. But the application of that phrase, whether to a "person" or to a "dealership," is less clear, particularly in view of plaintiff's contention that a "dealership" means a contract or a contractual

relationship, regardless of and without any reference to geographic location of a dealership business. Plaintiff's contention is supported to some extent by our decision in *Boatland, Inc. v. Brunswick Corp.*, 558 F.2d 818, 822 (6th Cir.1977), which held that the WFDL might apply to a nonresident dealer because there was nothing "to prevent anyone, particularly a Wisconsin resident, from making Wisconsin law applicable to his contract." Because the Wisconsin manufacturer in *Boatland* made reference to interpretation and construction of the dealership agreement under Wisconsin law, this court held that the manufacturer could not complain about "extra territorial application of the Wisconsin law." *Id.* In *Boatland*, we recognized that the WFDL was "enacted for the protection of the interests of the dealer." *Id.* at 823 (quoting *Rossow Oil Co. v. Heiman*, 72 Wis.2d 696, 702, 242 N.W.2d 176, 180 (1976)). But in *Boatland* we did not recognize the anomoly of interpreting a Wisconsin legislative enactment for the benefit of a Tennessee dealer in a Tennessee court against the interests of a Wisconsin manufacturer.

The Wisconsin legislature, however, did amend the WFDL in 1977 by adding the language that is at issue in this case: "'dealer' means a person who is a grantee of a dealership situated in the State of Wisconsin." It is logical to assume that this amendment came about in response to the decision in *Boatland*. As analyzed by the Wisconsin court in *Swan Sales*, the legislative history of the enactment of this 1977 amendment in controversy makes it abundantly clear that the language was intended to ensure that WFDL would only be applied to Wisconsin dealers, or those

---

**3.** The pertinent parts of Wis.Stat. § 135.02, a part of the WFDL, are as follows:

(2) *"Dealership" means a contract or agreement,* either expressed or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing

goods or services at wholesale, retail, by lease, agreement or otherwise.

(3) "Grantor" means a person who grants a dealership.

. . . .

(5) "Dealer" means a person who is a grantee of a *dealership situated in this state.*
(Emphasis added).

**4.** We were informed at oral argument that *Swan Sales* has not been appealed to the Wisconsin Supreme Court.

geographically "situated" in Wisconsin, who were the desired beneficiaries of the legislation in order to make their bargaining position more equal to manufacturers.

> This ... [legislation] establishes the legislature's intent to make the WFDL apply exclusively to *dealerships that do business within the geographic confines of the state of Wisconsin.*

374 N.W.2d at 644 (emphasis added).

 The intervening *Swan Sales* decision of the Wisconsin appellate court following the amendment to WFDL makes it plain, as it could not then have been to the district court, that the WFDL does not apply to a plaintiff located outside Wisconsin. Accordingly, the ninety day notice provision of WFDL does not apply in this case. Instead, the ten day contractual notice provision applies, which defendant satisfied. The jury determination that there was a good cause termination of the agreement mandates a judgment for defendant unless plaintiff can demonstrate error in the course of the trial proceedings.

### II.

 We do not find that plaintiff has demonstrated reversible error on the "good cause" jury instructions. Plaintiff concedes that the district court incorporated the Wisconsin statutory definition of "good cause" in its jury charge. Plaintiff argues, however, that because the district court "expanded the definition of good cause," it has committed reversible error. This expansion of the statutory definition arose from defendant's claim that it was acting for sound business reasons, and the district court's reference in its jury instructions to a "reasonable marketing strategy" as a basis for a good cause termination. A reviewing court should consider jury instructions as a whole and taken in their entirety. We believe the instructions in question fairly and adequately set out parameters for the jury to consider the "good cause" issue. In proper circumstances Wisconsin courts have considered that nondiscriminatory business bases for a manufacturer's termination of a dealer may constitute "good

cause" under Wisconsin law. *See Remus v. Amoco Oil Co.,* 611 F.Supp. 885 (E.D. Wis.1985); *St. Joseph Equipment v. Massey-Ferguson, Inc.,* 546 F.Supp. 1245 (W.D. Wis.1982). We therefore find no reversible error in the jury instruction given.

Accordingly, we REVERSE the directed verdict rendered for plaintiff because defendant's actions were in substantial conformity with applicable Wisconsin law. Judgment will be entered for defendant.