**PEUGEOT MOTORS OF AMERICA, INC., Plaintiff–Appellant,**

**v.**

**EASTERN AUTO DISTRIBUTORS, INC., Defendant–Appellee.**

**PEUGEOT MOTORS OF AMERICA, INC., Plaintiff–Appellee,**

**v.**

**EASTERN AUTO DISTRIBUTORS, INC., Defendant–Appellant.**

**Nos. 88–2598, 88–2604.**

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1989.

Decided Dec. 19, 1989.

Rehearing and Rehearing En Banc Denied Feb. 27, 1990.

John Y. Pearson, Jr. (Conrad M. Shumadine, James J. Wheaton, Randy D. Singer, Willcox & Savage, P.C., Norfolk, Va.; Peter S. Paine, Jr., Peter Mozarsky, Cleary, Gottlieb, Steen & Hamilton, on brief), for plaintiff-appellant.

Arthur S. Linker (Max Freund, Robert W. Gottlieb, Rosenman & Colin, New York City, Robert C. Nusbaum, Thomas F. McPhaul, Joseph R. Lassiter, Jr., William F. Devine, Beth Hirsch Berman, Hofheimer, Nusbaum, McPhaul & Samuels, Norfolk, Va., on brief), for defendant-appellee.

Before WIDENER, HALL, and WILKINS, Circuit Judges.

WIDENER, Circuit Judge:

In 1971, Eastern Auto Distributors, Inc. (Eastern) entered into a Distributor Agreement with the corporate predecessor of Peugeot Motors of America, Inc. (Peugeot). On October 14, 1987, Peugeot sent a notice of non-renewal to Eastern. On November 9, 1987, Peugeot filed its complaint asking for a declaratory judgment that it properly exercised its rights under the contract not to renew. Eastern filed a five-count counterclaim alleging that Peugeot's action violated the Automobile Dealer's Day in Court Act (15 U.S.C. §§ 1221–1225); §§ 197 and 197–a of New York's General Business Law; and the New York Franchised Motor Vehicle Dealer Act (N.Y.Veh. & Traf.Law 460–471); and also alleged a breach of contract. The district court granted Eastern summary judgment on Peugeot's declaratory judgment claim.[1] It also granted Peugeot's motion for summary judgment on Eastern's Dealer's Day in Court counterclaim and its breach of contract counterclaim,[2] all the remaining parts of Eastern's case.

■ Both sides appeal from the district court's decision. Peugeot argues that the district court erred as it applied the New York regulatory law in this case,[3] that New York common law permits the non-renewal, that the contract's specific non-renewal terms should be applied, and that even if the New York regulatory law applies, there was no violation under these facts. Eastern's cross-appeal argues that the district court improperly granted summary judgment on its Dealer's Day in Court and breach of contract counterclaims. Being of the opinion that the New York regulatory law was not properly applied in this case and that New York's common law permits the challenged non-renewal, we vacate the district court's summary judgment in favor of Eastern in Peugeot's declaratory judgment action. We are also of opinion that

1. Review of the district court's action granting Eastern summary judgment on Peugeot's complaint effectively disposes of Eastern's counterclaims two, three, and four which are merely the counter arguments (under New York statutes) to Peugeot's complaint.

2. The district court severed from counts one and five of Eastern's counterclaims the "Hertz Transaction" which awaits trial. That transaction is not before this court.

3. Eastern argues that Peugeot should be judicially estopped from contending that the New York regulatory schemes do not apply in this action. Eastern claims that Peugeot urged the applicability of the statutes during the course of the 1981 litigation. We believe that a fair reading of the record would be that Peugeot acquiesced in a good cause standard. The standard would not necessarily have been based on the New York regulatory statutes since the prior case was in part dealing with a partial termination of the Delaware territory and the contract may be said to require cause for a termination. Judicial estoppel is used to prevent a party from playing fast and loose with the courts and it should be applied with caution. *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166–67 (4th Cir.1982). We do not think that Peugeot is playing fast and loose with the court and decline to invoke judicial estoppel.

the district court properly granted summary judgment on Eastern's breach of contract counterclaim as well as on the Dealer's Day in Court counterclaim, with an exception to be hereinafter noted. So, subject to the exception, we largely affirm the district court's action granting summary judgment to Peugeot on Eastern's counterclaims one and five.

Peugeot, a Delaware corporation with its principal place of business in New Jersey, imports Peugeot automobiles into the United States and distributes them through a network of enfranchised dealers in states where Eastern is not the distributor. For over twenty-five years, Eastern, a Virginia corporation, has distributed Peugeot products in West Virginia, Virginia, North Carolina, South Carolina, Maryland, Kentucky, Tennessee, Delaware, the District of Columbia, and the northern part of Georgia. Eastern has never sold or distributed vehicles in New York. Eastern has never registered under New York's regulatory laws to be a dealer in New York, nor has it qualified to do business as a foreign corporation in New York.

On January 1, 1971, Peugeot and Eastern entered into the Distributor Agreement which is the subject of the present dispute. There are two relevant contractual provisions. The first is the non-renewal provision, paragraph thirty-two of the contract, which states:

> Unless terminated by any other provision, this agreement shall continue for a period of one year from the effective date set forth at the foot of the agreement [January 1, 1971] and shall be renewed automatically from year to year thereafter unless either party gives at least 60 days' written notice to the other that it shall not be so renewed.

The second relevant provision is paragraph thirty-nine, the choice of law provision, and provides that "[i]t is the express intention of the parties hereto that this agreement shall be governed by the laws of the State of New York."

The relationship between Peugeot and Eastern became strained in the late 1970's and on July 1, 1981, Eastern sued Peugeot alleging Dealer's Day in Court violations, Robinson–Patman Act (15 U.S.C. § 13 et seq.) violations, other antitrust violations, civil conspiracy claims and breach of contract claims. Peugeot counterclaimed alleging antitrust claims and breach of contract claims. See *Eastern Auto Distrib. v. Peugeot Motors of America*, 795 F.2d 329 (4th Cir.1986). Prior to trial the district court dismissed all the antitrust claims and Eastern's civil conspiracy claim. *Id.* at 331. After trial, before a magistrate[4] and a jury, the magistrate directed a verdict against Eastern on the Robinson–Patman Act claims and all Dealer's Day in Court claims except one involving a training facility. The jury returned a verdict for Eastern on its breach of contract claims regarding vehicle shortages and Peugeot's actions regarding the Delaware territory included in the agreement. The jury verdict was for Peugeot on all remaining claims. The magistrate granted judgment notwithstanding the verdict in favor of Peugeot on the contract claim based on the stock shortages. Both sides appealed and we affirmed except the district court was empowered to enter injunctive relief regarding the Delaware territory. *Eastern Auto Distrib. v. Peugeot Motors of America*, 795 F.2d 329, 340 (4th Cir.1986).

The relationship continued to be strained. On October 14, 1987, as stated, Peugeot sent notice of non-renewal to Eastern stating that pursuant to the non-renewal clause of the Distributor Agreement the contract would not be renewed on its expiration on January 1, 1988. The current action followed.

We first decide which state law is applicable. A federal court sitting in diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Since the action was filed in the Eastern District of Virginia, Virginia's choice of law rules apply. Virginia gives effect to parties' choice of law in a contract unless circum-

---

4. The parties consented to the transfer of the case from the district court to the magistrate.

stances show a fraudulent purpose. *Tate v. Hain*, 181 Va. 402, 25 S.E.2d 321, 324 (1943). There being no fraudulent purposes shown we give effect to the parties' choice to have New York law apply to the contract.

■ We next address the proper application of New York law. Absent some controlling statutory scheme, New York has traditionally enforced unrestricted termination clauses in contracts as written. *A.S. Rampell Inc. v. Hyster Co.*, 3 N.Y.2d 369, 165 N.Y.S.2d 475, 144 N.E.2d 371, 379 (1957). Although the case at bar deals with a non-renewal clause as opposed to a termination clause, we believe New York would treat the two very similar situations the same. Eastern argues that §§ 197 and 197–a [5] of New York's General Business Law as well as the New York Franchised Motor Vehicle Act apply and control over the contract's non-renewal clause.[6] Given that N.Y.Business Law §§ 197, 197–a and the N.Y.Franchised Motor Vehicle Dealer Act are very similar, we will address their applicability to the dispute together. Both of these regulatory acts have explicit geographic limitations. Section 197–a prohibits a non-renewal of a motor vehicle franchise contract to a distributor except in

good faith. Section 195 defines a distributor as one who "sells or distributes in this state." Likewise, § 463(2)(d)(1) prohibits non-renewal of a franchise of any "franchised motor vehicle dealer" except for due cause. Section 462(7) defines "franchised motor vehicle dealer" as "any person required to be registered pursuant to section four hundred fifteen of this chapter." Section 415(3) requires registration only if the dealer intends to engage in business "in this state."[7] Eastern has never done business in New York. It has never registered pursuant to New York law as a motor vehicle dealer or distributor. The New York regulatory schemes with explicit geographical limitations do not apply to this contract between two parties outside the state of New York. *Bimel–Walroth Co. v. Raytheon Co.*, 796 F.2d 840 (6th Cir.1986); *Gilchrist Machinery Co. v. Komatsu America Corp.*, 601 F.Supp. 1192 (S.D. Miss.1984).[8] Given that the two New York regulatory schemes by their own terms do not apply to the dispute, New York common law controls, and there is nothing in New York law to indicate that Peugeot did not act properly under the contract regarding its notice of non-renewal.

5. The New York legislature repealed §§ 197 and 197–a effective April 24, 1988. Peugeot sent the notice of the non-renewal in question on October 14, 1987, to prevent the automatic renewal on January 1, 1988. The present suit was filed on November 9, 1987. Although the district court issued an injunction preventing the severance of the contractual relationship until there is a final non-appealable judgment entered regarding the case, the injunction by its own terms does not affect in any manner the disposition of the case. N.Y.Gen.Constr.Law § 94 addresses the impact of a statutory repeal on a pending case under New York law. It states that:

Unless otherwise specially provided by law, all actions and proceedings, civil or criminal, commenced under or by virtue of any provision of a statute so repealed, and pending immediately prior to the taking effect of such repeal, may be prosecuted and defended to final effect in the same manner as they might if such provisions were not so repealed.

In this case the notice of non-renewal, the effective date of the purported non-renewal, and the filing of the lawsuit all occurred well before the repeal of §§ 197 and 197–a; therefore, in ac-

cordance with N.Y.Gen.Constr.Law § 94, the repeal has no impact on the present case.

6. There is no dispute that if the contract's non-renewal clause is to be applied as written Peugeot properly notified Eastern in writing well before the required 60 day period that the contract was not going to be renewed.

7. The New York legislature's findings are found in § 460 and indicate that the regulations were adopted because "the distribution and sale of motor vehicles within this state vitally affects the general economy of the state ... [and] is necessary ... to protect and preserve the investments and properties of the citizens of this state." The statute is in terms "... in the exercise of its [New York's] police power."

8. Eastern depends on opinions in *C.A. May Marine Sup. Co. v. Brunswick Corp.*, 557 F.2d 1163 (5th Cir.1977) and *Boatland, Inc. v. Brunswick Corp.*, 558 F.2d 818 (6th Cir.1977). They are not persuasive, however, because they interpreted the Wisconsin Fair Dealership Law §§ 135.02, *et seq.*, before the Wisconsin legislature amended the act to insert an explicit geographical limitation. See *Bimel–Walroth*, 796 F.2d at 842–43.

We next consider the propriety of the district court's grant of Peugeot's motion for judgment on Eastern's Dealer's Day in Court and breach of contract counterclaims. Peugeot moved for summary judgment on several grounds including res judicata, statute of limitations, estoppel, and that the defendant could prove no damages. The district court granted Peugeot's motion without clearly stating upon which ground or grounds it relied.

We first address the issue of res judicata. The complaint in the 1981 litigation which alleged Dealer's Day in Court violations and contractual breaches among other things is strikingly similar to the current counterclaims alleging Dealer's Day in Court claims and contractual breaches. Res judicata "is not a technical rule but a rule of 'fundamental and substantial justice' of public policy and private peace 'which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way.'" *Nash Cty. Bd. of Ed. v. Biltmore Co.,* 640 F.2d 484, 486 (4th Cir.), *cert. denied,* 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981), quoting *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), and *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506, 507–08, 61 L.Ed. 1148 (1917). Not only does res judicata bar claims that were raised and fully litigated, it "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). Courts presume that a litigant has "done his legal and factual homework" and raised all grounds arising out of the same factual context to support his claims. *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 596 (7th Cir.1986). Eastern raises several factual allegations which were either fully litigated or in existence at the time of the 1981 litigation. These include allegations that: Peugeot in 1981 wrongfully removed the state of Delaware from Eastern's area, Peugeot in 1974 attempted to terminate the distributorship, Peugeot in 1975 attempted to force Eastern to accept changes in the contract, Peugeot in 1977 and 1978 attempted to purchase Eastern, and that Peugeot filed baseless counterclaims in the 1981 case. Such claims or claims based on such facts are forever extinguished by the final judgment in the 1981 case.

Eastern raises two allegations which involve alleged continuing actions on the part of Peugeot which were litigated in the prior suit but have continued to the present suit. One is with respect to Peugeot's sales incentive policy, started in 1979, which required Eastern to pay for 25% of the cost of the program for its dealers. The policy existed prior to the 1981 litigation and was raised by the 1981 complaint. The second allegation is that since 1974 Peugeot engaged in a "continuous, unfair and inequitable scheme" designed to drive Eastern out of business. Eastern alleged virtually the same thing in the 1981 complaint: that since 1978 Peugeot engaged in a whole range of activities with "intent to coerce, intimidate" and force Eastern out of business. Both of these counterclaims involve many of the same facts actually litigated in the prior suit. They do, however, contain events that occurred after the 1981 suit. We do not believe that the mere fact that Peugeot's questioned policies continued after the 1981 litigation allows Eastern to make the same legal claim about the same policies that were litigated and on account of which relief was denied in prior litigation. See *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 596 n. 10 (7th Cir. 1986). The Seventh Circuit reasoned that the fact a later complaint alleged actions extending after the first suit was "unimportant." It held that "some chronological overlap" coupled with the fact that the "two complaints arise out of the same common nucleus of operational fact" resulted in the claims being barred by res judicata.

The only remaining allegations in Eastern's first and fifth counterclaims not barred by res judicata involve either the Hertz Transaction or the 1987 non-renewal

as violating the Dealer's Day in Court Act. The Hertz Transaction was severed from the remaining action and the summary judgment does not apply to it.

This leaves us with the Dealer's Day in Court claim, which is the first counter-claim. We first note that Eastern has acknowledged that it can prove no damages with respect to that claim, so any part of the claim relating to damages will not be litigated. Eastern depends upon the affidavit of one Blocker, its Chairman of the Board and President at all relevant times, to supply facts sufficient to prevent a summary judgment being granted. We have examined the affidavit of Blocker with some care and find that nearly every allegation in the affidavit is either based on facts which were or could have been litigated in the 1981 case or consist simply of the same claims which were litigated in the 1981 case. Thus, nearly all of Eastern's Dealer's Day in Court claim is barred by res judicata.

The only exception to barring the entire claim of Eastern with reference to the Dealer's Day in Court claim is that part of the claim with respect to the Hertz Transaction. Especially in view of the fact that Eastern claims no damages for its Dealer's Day in Court claim and that nearly all of its claim is barred by res judicata, it may seem doubtful that any part of the claim could survive. The district court, however, did not address any factual underpinnings of that claim and whether any construction of the pleadings could be said, if factually supported, to provide an inference of failure to act in good faith in not renewing the franchise in question under 15 U.S.C. § 1522 and the case law. We do not suggest that Eastern's Dealer's Day in Court claim is either subject to summary judgment or not subject to it. We do observe, however, that the matter has not been treated, and thus we are left with a more or less naked procedural allegation (which itself has not been critically examined) with respect to the Hertz Transaction, as the facts developed with respect to the Hertz Transaction may find themselves under the Dealer's Day in Court Act.

In the proceedings after remand in the district court, so far as Eastern's Dealer's Day in Court claim may be based solely on facts with respect to the Hertz Transaction, it should not be held to be barred by res judicata. Otherwise, Eastern's entire Dealer's Day in Court claim is so barred.

We note that while one might expect judgment to be entered in favor of Peugeot in its declaratory judgment action because there is no reason, under New York law, that it should be required to renew the agreement in question, such is not quite the case. The remaining part of the Dealer's Day in Court Act claim, which must be treated in this case as it asks for injunctive relief, is rather a defense to the declaratory judgment action of Peugeot. Thus, it is conceivable that although Peugeot had a right not to renew the agreement under New York law, an injunction might issue under the Dealer's Day in Court Act preventing the non-renewal.

The judgment of the district court in favor of Eastern on Peugeot's declaratory judgment action is vacated; its judgment in favor of Peugeot on the contractual and Dealer's Day in Court counterclaims is affirmed, with the exception of that part of such claim as may relate to the Hertz Transaction as set forth above. The case is remanded to the district court for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART; VACATED IN PART; and REMANDED WITH INSTRUCTIONS.

K.K. HALL, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority opinion to the extent that it vacates the lower court's declaratory judgment because I believe that the parties' choice of New York law should be interpreted to include an agreement to be bound by New York's statutes governing the non-renewal of automobile dealerships. The majority's refusal to apply the New York non-renewal statutes, based on "explicit geographical limitations" in the definition section of that

state's code, is the result of a strained statutory construction and of a failure to focus on the intent of the contracting parties.

The majority recognizes, and I agree, that the contractual choice of New York law should, under the forum state's (Virginia) choice of law rules, be given effect. I also agree with the majority's determination that, absent a controlling statute to the contrary, New York law would uphold the unrestricted termination clause in the Peugeot–Eastern dealership contract. My disagreement stems from the majority's constrictive reading of the New York statutes to limit the parties' contractual choice of law to only that state's common law and those statutes which can somehow be read to have been intended by New York to have no territorial limitation.

The majority declines to give effect to the parties' choice of New York law with regard to the non-renewal statutes because the definition section of the regulatory scheme defines "distributor" as one who "sells or distributes in this state" and "franchised motor vehicle dealer" as one who is "required to be registered in this state." Op. 358–359. Because Eastern had never done business in New York,[1] the majority finds that the statutes "by their own terms do not apply to the dispute...." Op. 359. The cases cited by the majority, however, make it clear that the underpinning for this holding is that the New York legislature did not intend that these statutes have extraterritorial effect.

The primary authority upon which the majority relies, *Bimel–Walroth Co. v. Raytheon Co.,* 796 F.2d 840 (6th Cir.1986), proceeded from the premise that a state legislature may affirmatively restrict the use of its laws to govern a contract and held that Wisconsin did just that with regard to its Fair Dealership Law. The Sixth Circuit's analysis is based on a lower state court opinion which made an in-depth analysis of the legislative history of the 1977 amendments to the Wisconsin law. In *Swan Sales Corp. v. Jos. Schlitz Brewing Co.,* 126 Wis.2d 16, 374 N.W.2d 640 (1985), the court found that a territorially-restrictive definition of "dealer" was clearly intended to confine the benefits of the Fair Dealership Law's termination provisions to Wisconsin dealers only. Aside from the bare language of the definitional provisions of New York's statutes, however, no showing has been made that New York affirmatively intended to deprive outside parties from choosing New York law. If anything, New York has clearly evinced a desire to have its laws chosen as governing contracts.[2] Even if it is assumed that a state legislature may act to withhold its enactments from use by contracting parties, New York has not done so.

Most if not all regulatory schemes like New York's could be tied to similar territorial restrictions because statutes are not normally enacted to affect the legal rights and duties of parties with no relationship to that state.[3] In *C.A. May Marine Supply*

---

**1.** Peugeot, however, does do business in New York; moreover, it is the successor (by 1974 merger) to Peugeot, Inc., a New York corporation with which Eastern executed the 1971 contract involved in this case.

**2.** N.Y.Gen.Obligations Law § 5–1401 (1984) provides as follows:

1. The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars, including a transaction otherwise covered by subsection one of section 1–105 of the uniform commercial code, may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to

this state. This section shall not apply to any contract, agreement or undertaking (a) for labor or personal services, (b) relating to any transaction for personal, family or household services, or (c) to the extent provided to the contrary in subsection two of section 1–105 of the uniform commercial code.

2. Nothing contained in this section shall be construed to limit or deny the enforcement of any provision respecting choice of law in any other contract, agreement, or undertaking.

**3.** For instance, each state in the Fourth Circuit also presently has a statutory prohibition against the termination or non-renewal of motor vehicle dealership contracts without good cause, regardless of the terms of the franchise agreement: Va.Code Ann. § 46.2–1569(5) (1989); N.C.Gen.Stat. § 20–305(6) (1988); Md.

*Co. v. Brunswick Corp.*, 557 F.2d 1163, 1166 (5th Cir.1977), the court discussed a similar argument in the following manner:

> The defendant further argues that, even if Wisconsin law must govern the contract, plaintiff still is not protected by the dealership law because it was not the intention of the Wisconsin legislature to extend protection to out-of-state dealers. The argument has surface appeal, but is decidedly a red herring. Obviously, the legislature passed the law to protect Wisconsin dealers, and had no concern for protecting the termination rights of dealers such as plaintiff. But that does not mean that parties, one or both of which have some reasonable contact with the State of Wisconsin, may not agree to clothe themselves with the rights and duties of citizens of that state when determining their respective rights under their contract.... No state intends to govern the transactions of citizens of other states when it establishes laws governing contractual relations between parties. When, however, parties to a contract have contact with more than one state, the parties are expected, and encouraged, to stipulate which state's substantive law will govern. Obviously, when such agreement occurs, both parties are bound as well as protected by the state law stipulated.

(Citations omitted.) Peugeot contends that *C.A. May* is no longer good law in light of the subsequent amendments to the Wisconsin statute adding the territorial restriction. *See Swan Sales; Bimel–Walroth.* The Fifth Circuit, however, clearly indicated that the legislature's intent to limit the statute's protective scope *vel non* was irrelevant. I am persuaded that the analysis of the Fifth Circuit in *C.A. May* is more in line with the realities of both lawmaking and commerce.

By contracting, Peugeot and Eastern agreed to be bound by the various terms of their agreement. The choice of New York law essentially amounts to an agreement to incorporate that state's laws, both statutory and common, into the contract itself. Accordingly, I would affirm the declaratory judgment of the district court on the ground that the New York non-renewal statutes apply to Peugeot's attempted termination of its distributorship agreement with Eastern. Because Eastern's counterclaims two, three, and four are essentially defenses or counter arguments to Peugeot's declaratory judgment action, I would affirm the lower court's grant of Eastern's motion for summary judgment as to such counterclaims. I concur in the majority opinion to the extent that it affirms the district court's order granting summary judgment to Peugeot on Eastern's counterclaims 1 (breach of contract) and 5 (Dealer's Day in Court).

Transp.Code Ann. § 15–209(a) (1984); S.C.Code Ann. § 56–15–40(3)(c) (Law.Co-op.1977); W.Va. Code § 17A–6A–4(1)(c) (1986). Each of these states' statutes, moreover, has some "explicit geographical limitation" which arguably would, under the analysis put forward in the majority opinion, circumvent the good cause requirement if the laws of any one of these states had been chosen by the parties to govern their contract: Va.Code Ann. § 46.2–1500 ("Distributor means a person who sells or distributes new motor vehicles pursuant to a written agreement with the manufacturer, to franchised vehicle dealers in the Commonwealth."); N.C.Gen.Stat. § 20–286(3) (1988) (" 'Distributor' and 'wholesaler' mean a person ... who sells or distributes motor vehicles to motor vehicle dealers in this State ..."); S.C.Code Ann. § 56–15–10(g) (1988 Cum.Supp.) (" 'Distributor' [means] any person who sells or distributes new motor vehicles to motor vehicle dealers or who maintains distributor representatives within the State."); Md. Transp.Code Ann. § 11–112 (1984) (" 'Distributor' means any person who: (1) Sells or distributes to dealers in this State new vehicles of a type required to be registered under Title 13 of this article; or (2) Maintains distributor representatives in this State for these purposes."); W.Va.Code § 17A–6A–3 (1986) (" 'New motor vehicle dealer' means a person who holds a dealer agreement granted by a manufacturer or distributor for the sale of its motor vehicles ... and who has an established place of business in this State.").