[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO STRIKE
This action was commenced by service of process on August 18, 1998. The complaint is in two counts. The first count alleges the violation of state franchise laws, including both the Connecticut Franchise Act, General Statutes § 42-1 33e et seq., and the franchise laws of the states of Arkansas, California, Delaware, Hawaii, Indiana, Illinois, New Jersey and Virginia.[1] (¶ 23) The second count alleges the violation of the Connecticut Unfair Trade Practices Act ["CUTPA"], General Statutes § 42-110a et seq. (¶ 65)
As alleged in the complaint, the defendant, Jacobs Vehicle Equipment ["Jacobs"], is a manufacturer and seller of diesel truck parts and accessories. (¶ 1) The plaintiffs are several long-term franchisees of the defendant — collectively referred to as the Jacobs Warehouse Distributors, or "JWDs," in both parties' memoranda — who distribute diesel engine brake products manufactured by the defendant; (¶ 2)
The franchise agreements[2] that govern the relationships between the parties are form contracts prepared by the defendant. These agreements provide that either party may terminate the relationship upon thirty days written notice. The contracts also contain a choice-of-law provision that states: "The construction, validity, enforceability and enforcement of this Agreement and of each clause thereof and all documents relating thereto and the rights and relations of the parties shall be governed by and construed in accordance with the laws of the State and decided by the courts of Connecticut where the Manufacturer is located."
When the defendant sought to terminate its relationships with the plaintiffs, the plaintiffs brought this action. In count one, the plaintiffs allege that notwithstanding the termination provision of the contract, the defendant violated the franchise statutes of Connecticut and other states in which certain plaintiffs do business by terminating the agreements without cause. (Complaint ¶ 23) In count two, the plaintiffs allege CT Page 15593 that the defendant violated the Connecticut Unfair Trade Practices Act by terminating the franchise relationships without cause in violation of the Connecticut Franchise Act and by making false representations, which the plaintiffs relied upon, concerning the plaintiffs' future role as distributors for the defendant. (¶¶ 67-70)
On October 5, 1998, the defendant filed a motion to strike the plaintiffs' entire complaint. The defendant asserts in its motion that none of the statutes cited by the plaintiffs provides a basis for recovery. Several memoranda have been filed by each party, and oral argument was heard on the matter on October 19, 1998.
 DISCUSSION
A motion to strike may be used "to contest . . . the legal sufficiency of any complaints . . . to state a claim upon which relief can be granted." Peter-Michael Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998). In considering a motion to strike, "all well pleaded facts and thosefacts necessarily implied from the allegations are taken as admitted." (Emphasis in original; internal quotation marks omitted.) Parsons v. United Technologies Corp., 243 Conn. 66,100, 700 A.2d 655 (1997). In reviewing a motion to strike, the court must construe the facts in a manner most favorable to the party opposing the motion. See Pamela B. v. Ment, 244 Conn. 296,308, 710 A.2d 688 (1998).
A complaint includes all exhibits referenced therein. See Practice Book § 10-29, formerly § 141; see also Hossan v.Hudiakoff, 178 Conn. 381, 382, 423 A.2d 108 (1979). When a copy of a contract is incorporated into the complaint, the court can consider the contract as part of the complaint in ruling on a motion to strike. See H. Pearce Real Estate Co. v. Kaiser,176 Conn. 442, 444, 408 A.2d 230 (1979); Redmond v. Matthies,149 Conn. 423, 425-26, 180 A.2d 639 (1962).
 COUNT ONE: CONNECTICUT FRANCHISE ACT
The Connecticut Franchise Act, General Statutes § 42-133e et seq., provides a variety of protections to franchisees. One such protection is that a franchise relationship may not be terminated by a franchisor "except for good cause." General Statutes § 42-133f (a). However, under § 42-133h, the act CT Page 15594 "shall apply only to franchise agreements entered into, renewed or amended on or after [October 1, 1972], the performance of which contemplates or requires the franchisee to establish or maintain a place of business in this state."
In support of its motion to strike, the defendant argues that none of the plaintiffs have stated a cause of action under the Connecticut Franchise Act. The act, it claims, does not apply to out-of-state franchisees, and none of the plaintiffs allege that they do any business in Connecticut. The plaintiffs concede that the act, by its terms, only applies to in-state franchisees. However, they argue that the contractual choice-of-law provision designating Connecticut law as governing creates a cause of action under the act notwithstanding the territorial limitations contained therein.
With respect to the validity of choice-of-law provisions, Connecticut has adopted the analysis set forth in 1 Restatement (Second), conflict of Laws § 187, p. 561 (1971). See Elgar v.Elgar, 238 Conn. 839, 850, 679 A.2d 937 (1996). Under the Restatement analysis, the parties' contractual choice of law will normally be upheld.[3] In this case, however, the issue is not whether Connecticut law applies generally, but whether portions of Connecticut laws which limit their territorial scope apply when the parties have designated Connecticut law as applicable. Ultimately, this issue turns on the language of the choice-of-law provision contained in each of the agreements between the parties.
"The rules of construction are applied only if the language of the contract is ambiguous, uncertain or susceptible of more than one construction." Levine v. Advest, Inc., 244 Conn. 732,746, 714 A.2d 649 (1998). "It is a general rule of construction that whenever two possible interpretations of a contract seem equally possible, the language will be construed against the party responsible for its inclusion." Mongillo v. Commissioner,214 Conn, 225, 231, 571 A.2d 112 (1990). In this case, the interpretations of the choice-of-law provision advanced by each party are equally plausible. Thus, the choice-of-law provision is ambiguous, and the rules of construction are applicable. Examining the representative contract attached to the complaint, it is evident that it was drafted by the defendant. Accordingly, the court must favor the construction advanced by the plaintiffs that the choice-of-law provision was meant to make all of the substantive provisions of Connecticut's laws applicable CT Page 15595 notwithstanding any territorial limitations in those laws which otherwise would render them inapplicable.
No court in Connecticut has yet considered the precise issue of whether a contractual choice-of-law provision overrides territorial limitations in the chosen state's laws. However, there are a number of decisions in other jurisdictions that have considered this issue. A majority of the cases hold that a state franchise statute's territorial limitations preclude a cause of action by out-of-state franchisees even if the parties have contractually agreed to be governed by the law of the state in question. See, e.g., JRT, Inc. v. TCBY Systems, Inc.,52 F.3d 734, 736, 739-40 (8th Cir. 1995) (non-Arkansas plaintiff has no cause of action under Arkansas franchise statute notwithstanding parties' choice-of-law provision selecting Arkansas law); HighwayEquipment Co. v. Caterpillar, Inc., 908 F.2d 60, 62-64 (6th Cir. 1990) (same, Illinois choice-of-law); Peugeot Motors of America,Inc. v. Eastern Auto Distributors, Inc., 892 F.2d 355, 358 (4th Cir. 1989) (same, New York choice-of-law); Bimel-Walroth Co. v.Raytheon Co., 796 F.2d 840, 842-43 (6th Cir. 1986) (same, Wisconsin choice-of-law); Carlock v. Pillsbury Co., 719 F. Sup. 791,810 (D.Minn. 1989) (same, New York choice-of-law provision);In re Montgomery Ward Catalog Sales Litigation, 680 F. Sup. 182,186 (E.D. Pa. 1987) (same, Illinois choice-of-law provision);Premier Wine Spirits of South Dakota, Inc. v. E. J. GalloWinery, 644 F. Sup. 1431, 1439 (E.D. Cal. 1986) (same, California choice-of-law provision); Gilchrist Machinery Co. v. KomatsuAmerica Corp., 601 F. Sup. 1192, 1201 (S.D. Miss. 1984) (same, California choice-of-law provision); McDonald's Corp. v. C.B.Management Co., United States District Court, Docket No. 97C6176, 1998 WL 164865, * 10 (N.D. Ill. 1998) (same, Illinois choice-of-law provision); Winer Motors, Inc. v. Jaguar RoverTriumph Inc., 208 N.J. Super. 666, 506 A.2d 817, 820 (N.J.Super. A.D. 1986) (same, New Jersey choice-of-law provision); see alsoBurger King Corp. v. Austin, 805 F. Sup. 1007, 1023 n. 24 (if Florida franchise statute included territorial limitation, statute would not protect non-Florida plaintiff notwithstanding choice of Florida law in contract); Bunch v. Artec International Corp.,559 F. Sup. 961, 968 n. 14 (S.D.N.Y. 1983) (California franchise statute would not afford non-California plaintiff protection notwithstanding choice of California law in contract).
Most of these decisions do not discuss the reasons for so holding and simply conclude that because the state legislatures intended for the relevant acts only to apply to in-state CT Page 15596 franchisees, no cause of action lies. See, e.g., HighwayEquipment Co. v. Caterpillar, Inc., supra, 908 F.2d 62-64;Peugeot Motors of America, Inc. v. Eastern Auto Distributors,Inc., supra, 892 F.2d 358; Bimel-Walroth Co. v. Raytheon Co.,
supra, 796 F.2d 843; Premier Wine Spirits of South Dakota Inc.v. E. J. Gallo Winery, supra, 644 F. Sup. 1439. Thus, these decisions focus on the language of the statutes rather than the language of the contractual provisions. In support of the position adopted by these courts, one commentator has suggested: "Theoretically, parties might specifically contemplate that a franchise relationship law will apply in states other than that in which the law was enacted. Such a case is so unlikely in a franchise context, however, that it may never rise above the level of theory. Franchise contracts are drafted by franchisors, and it is not in their interest to expand the application of franchise relationships laws. Accordingly, it is reasonable to start from the presumption that the contract did not contemplate that such would apply beyond the territory in which it was enacted."[4] T. Pitegoff, "Choice of Law in Franchise Relationships: Staying Within Bounds," 14 Franchise L. J. 89, 117 (1995).
A few courts have held that where a contractual choice-of-law provision designates a state's laws as governing, an out-of-state plaintiff may maintain a cause of action under the designated state's franchise statute notwithstanding a territorial limitation contained in the operative act. See Boatland, Inc. v.Brunswick Corp., 558 F.2d 818, 822 (6th Cir. 1977) (non-Wisconsin plaintiff has claim under Wisconsin franchise statute in light of contractual choice of Wisconsin law as governing); C. A. MayMarine Supply Co. v. Brunswick Corp., 557 F.2d 1163, 1166-67 (5th Cir. 1977) (same); Mon-Shore Management, Inc. v. Family Media,Inc., 584 F. Sup. 186, 193 (same, New York choice-of-law provision); Department of Motor Vehicles v. Mercedes-Benz ofNorth America, Inc., 408 So.2d 627, 630 (Fla.App. 1981) (same, New Jersey choice-of-law provision); see also Infomax OfficeSystems, Inc. v. MBO Binder Co. of America, 976 F. Sup. 1247,1254 (S.D. Iowa 1997) (choice-of-law provision designating Illinois law creates cause of action under Illinois statute for non-Illinois plaintiff only to extent that statute does not conflict with terms of contract); Peugeot Motors of America, Inc.v. Eastern Auto Distributors, Inc., supra, 892 F. Sup. 360-62 (Hall, J., concurring in part and dissenting in part). The plaintiffs suggest that the reasoning set forth in the C. A. May
decision is persuasive. The defendant in C. A. May argued that CT Page 15597 the statute in question, the Wisconsin Fair Dealership Law ["WFDL"], Wisc. Stat. § 153.02 et seq., was not meant to apply to out-of-state dealers and was thus inapplicable to the out-of-state plaintiff notwithstanding the existence of a choice-of-law provision in the parties' contract selecting Wisconsin law. C.A. May Marine Supply Co. v. Brunswick Corp., 
supra, 557 F.2d 1166. The court, however, held that the plaintiff was protected by the WFDL: "Obviously, the legislature passed the law to protect Wisconsin dealers, and had no concern for protecting the termination rights of dealers such as plaintiff. But that does not mean that parties, one or both of which have some reasonable contact with the State of Wisconsin, may not agree to clothe themselves with the rights and duties of citizens of that state when determining their respective rights under their contract." Id.; see also Peugeot Motors of America, Inc. v.Eastern Auto Distributors, Inc., supra, 892 F.2d 362 (Hall, J., concurring in part and dissenting in part) (choice of New York law operates to incorporate substantive provisions of New York statutory and common law into the contract itself). Similarly, one commentator suggests: "Although a state's franchisee protection law may apply, by its terms, only to franchisees within that state, when the franchisor agrees to be bound by the whole body of that state's law, it agrees that such protective legislation will apply to the subject relationship. Having chosen the law, the franchisor is bound by both that which is favorable, and that which is unfavorable." G. Carpinello, "Testing the Limits of Choice of Law Clauses: Franchise Contracts as a Case Study," 74 Marq.L.Rev. 57, 79 (1990); but see Pitegoff, supra, 14 Franchise L.J. 117 (asserting that parties in this situation intend for territorial limitations in a chosen state's laws to operate to limit applicable law).
The defendant correctly points out that subsequent to C.A.May, the WFDL was amended to include a provision limiting its application to Wisconsin dealerships, and that this amendment was likely a result of the C.A. May and Boatland decisions. See, e.g., Bimel-Walroth Co. v. Raytheon Co., supra, 796 F.2d 842. While this is true, the court's decision in C.A. May did not turn on whether the statute at that time was intended to have such a limitation. See Peugeot Motors of America, Inc. v. EasternAuto Distributors, Inc., supra, 892 F.2d 362 (Hall, J., concurring in part and dissenting in part). In fact, the court conceded that the Wisconsin act would not normally apply to an out-of-state franchisee in the absence of a choice-of-law provision stating that Wisconsin law governs the parties' CT Page 15598 agreement. See C.A. May Marine Supply Co. v. Brunswick Corp.,
supra, 557 F.2d 1166. The determinative factor in C.A. May,
rather, was the existence of the parties' choice-of-law provision, which rendered the Wisconsin act's substantive provisions applicable to the parties irrespective of the act's possible geographical restrictions. See id.
Although there is sound reasoning supporting each side of this argument that can be extracted from these decisions, the reasoning set forth in C.A. May is more persuasive in light of the ambiguous nature of the choice-of-law provision in the present action. The decisions which do not allow a cause of action to lie do not address the fact that the choice-of-law provisions in those cases could be construed in the manner suggested by the plaintiffs in the present action. In the context of a motion to strike, the ambiguous choice-of-law provision must be construed in favor of the plaintiffs. Thus, for the purpose of this motion, the provision must be read such that the parties have agreed to clothe themselves with the rights and duties of similarly situated Connecticut citizens. Furthermore, it seems counterintuitive that when the parties to an agreement stipulate that Connecticut law is to govern their rights and relationships, they do not intend for the substantive provisions of the Connecticut statute most relevant to their relationship to be part of the governing law. In the present action, the parties entered into franchise agreements and designated that Connecticut law should govern the agreements and the rights and relations of parties. It is logical that Connecticut franchise statute was meant to be part of the governing body of law chosen. Given that the Connecticut Franchise Act was enacted to protect franchisees, it would not be consistent with the purpose of the act to permit the defendant to use it as a shield against its application to the franchise relationships at issue in the present action.
What the parties intended with respect to the choice-of-law provision is a question of fact that must be explored at least during discovery and perhaps at trial. For the purpose of a motion to strike, however, all unsettled facts must be interpreted in the manner most favorable to the party opposing the motion. Construing the facts in a manner most favorable to the plaintiffs, they have alleged a legally sufficient cause of action under the Connecticut Franchise Act[5] Accordingly, the motion to strike is denied with respect to count one of the complaint. CT Page 15599
 COUNT TWO: CUTPA
The defendant argues that count two of the plaintiffs' complaint, alleging a violation of the Connecticut Unfair Trade Practices Act ["CUTPA"], General Statutes § 42-110a et seq., should be stricken as CUTPA does not apply to the plaintiffs because they are all out-of-state businesses. The defendant also contends that even if CUTPA is applicable to the plaintiffs, the defendant's actions do not as a matter of law constitute "unfair acts or practices." The plaintiffs argue in their reply and surreply that CUTPA is applicable because of the parties' choice-of-law provision designating Connecticut law as governing, and because they have alleged the requisite nexus with Connecticut. The plaintiffs also claim that the defendant's conduct as alleged constitutes a CUTPA violation.
CUTPA declares that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). "Trade" and "commerce" are defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state."
(Emphasis provided.) General Statutes § 42-110a (4). The meaning of the geographical limit contained in this definition is unclear and has not been clarified by an appellate court in this state.
CUTPA "is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." (Citations omitted.) Willow Springs Condominium Assn.,Inc. v. Seventh BRT Development Corp., 245 Conn. 1, (1998).
One court has held that CUTPA may be applied to conduct that occurs outside the state where choice of law principles indicate the applicability of Connecticut law. See USGI, Inc. v. MicheleLimited Partnership, United States District Court, Civil No. B-88-229 (D. Conn. January 29, 1990) (16 CLT No. 11, 24). The USGI decision, however, is not clear as to whether there was a contractual choice of law. Id. Regardless of whether the existence of a contractual choice-of-law provision selecting Connecticut law as governing renders CUTPA applicable in this case, the court finds that the plaintiffs have alleged a CT Page 15600 sufficient nexus with Connecticut to withstand the defendant's motion to strike.
Few decisions discuss the geographical scope of CUTPA. However, consistent with the notion that CUTPA is to be liberally construed, it has been held that "CUTPA does not necessarily require that the violation occur within the state, only that it be tied to a form of trade or commerce intimately associated with Connecticut." H D Wireless Limited Partnership v. Sunspot,
United States District Court, Civil No. H-86-1026 (February 24, 1987) (13 CLT No. 17, 22). Other courts have followed the reasoning in H D Wireless in holding that CUTPA applies as long the alleged conduct is tied to trade or commerce intimately associated with Connecticut. See Titan Sports, Inc. v. TurnerBroadcasting Systems, Inc., 981 F. Sup. 65, 71 (D. Conn. 1997);Uniroyal Chemical Co. v. Drexel Chemical Co., 931 F. Sup. 132, 140
(D. Conn. 1996); Richmond Fredericksburg Potomac Railroad Corp.v. Aetna Casualty Surety Co., United States District Court, Docket No. 3:96CV1054 (D. Conn. April 11, 1997).
Interestingly, one court has considered whether CUTPA was applicable in an action between a non-Connecticut company and Jacobs, the defendant in the present action. See JacobsManufacturing Co. v. Sam Brown Co., United States District Court, Docket No. 84-0887-CV-W-9 (W.D. Mo. June 30, 1986) (1986 WL 7815). That court held that the plaintiffs had stated a claim under CUTPA based on the allegations indicating "a course of conduct emanating out of Connecticut which constituted unfair methods of competition and unfair and deceptive practices in the conduct of trade or commerce." Id.
The defendant in the present action argues that in contrast to Sam Brown, the plaintiffs here have not alleged any course of conduct emanating out of Connecticut. However, the existence of such a course of conduct may be reasonably inferred from the allegations of the complaint. The plaintiffs allege that the defendant has its principal place of business in Connecticut. It is logical to infer that where non-Connecticut franchisees have an agreement to distribute products created and manufactured by a company with its principal place of business in Connecticut, the defendant's conduct is tied to trade or commerce intimately associated with Connecticut. While there may remain an issue of fact as to the nature of the nexus between the alleged misconduct and this state, it cannot be resolved in the context of a motion to strike. CT Page 15601
The defendant also argues that the conduct alleged by the plaintiffs does not, as a matter of law, amount to a violation of CUTPA. The test for whether conduct violates CUTPA consists of three parts: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." (Alterations in original; internal quotation marks omitted.)Willow Springs Condominium Assn., Inc. v. Seventh BRT DevelopmentCorp., supra, 245 Conn. 43; see also Thames River Recycling, Inc.v. Gallo, 50 Conn. App. 767, 785-86, (1998). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA." (Citations omitted; internal quotation marks omitted.)Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 105-06,612 A.2d 1130 (1992); see also Thames River Recycling, Inc. v.Gallo, supra, 50 Conn. App. 786.
The plaintiffs have sufficiently alleged a violation of public policy. In particular, the plaintiffs allege that the defendant violated the terrorization provision of the Connecticut Franchise Act by terminating its relationship with the plaintiffs without cause. The act reflects a public policy in favor of protecting franchisees from unjustified and unfair terminations. See General Statutes § 42-133e et seq. The plaintiffs, in addition to having stated a claim under the Connecticut Franchise Act, have alleged that the public policy behind the act has been violated. It has been held that a violation of the Connecticut Franchise Act amounts to a violation of public policy. SeeChem-Tek, Inc., General Motors Corp., 816 F. Sup. 123, 130-31 (D. Conn. 1993); Hartford Electric Supply Co. v. Allen-Bradley Co.,
Superior Court, judicial district of Hartford, Docket No. 562061 (May 28, 1997) (Satter, J.) (19 CONN. L. RPTR. 363, 370-71); but see Grand Light Supply Co, v. Honeywell Inc., 771 F.2d 672, 680
(1985) ("a violation of the [Connecticut] Franchise Act would not necessarily implicate the interests protected by CUTPA"). CT Page 15602 Accordingly, the plaintiffs' complaint satisfies the first prong of the three-part CUTPA test.
The plaintiffs' complaint also satisfies the second part of the test. The complaint alleges that the defendant made a series of false representations to the plaintiffs concerning the life of the partnership between the parties. The defendant argues that the statements referenced in the complaint do not amount to unethical or unscrupulous conduct as they were not false. However, the truth of the alleged representations is a question of fact which for the purposes of this motion to strike, must be construed in favor of the plaintiffs. The defendant also contends that the complaint fails to allege that the statements were untrue at the time they were made and that the defendant knew of their falsity when it made the statements. Intent to deceive, however, is not a required element for a CUTPA violation. Construing the facts in the complaint in a manner favorable to sustaining its legal sufficiency, the court finds that the plaintiffs have alleged conduct that is immoral, unethical, oppressive, or unscrupulous, thus satisfying the second prong of the three-part analysis for CUTPA violations.
The plaintiffs have also satisfied the final prong of the test. Based on the allegations of the complaint, it can be inferred that the plaintiffs will suffer substantial economic harm, based largely on the investments they have made in connection with their relationships with the defendant, should the defendant be allowed to terminate the franchise relationships. See Hartford Electric Supply Co. v. Allen-BradleyCo., supra, 19 CONN. L. RPTR. 371 (finding that termination of franchise agreement would cause substantial injury to franchisee). As the complaint satisfies each part of the three-part test for a CUTPA violation, the plaintiffs have sufficiently alleged a violation of CUTPA. The defendant's motion to strike is therefore denied with respect to the second count of the plaintiffs' complaint.
Accordingly, the defendant's motion to strike the complaint is denied in its entirety.
Peck, J.