**James J. MAY, d/b/a Hawthorn Industries, Plaintiff,**

v.

**The WHEELABRATOR CORPORATION, Defendant.**

**No. 91–C–1386.**

United States District Court, E.D. Wisconsin.

Feb. 4, 1993.

John K. Brendel, Brendel Law Office, Brookfield, WI, for plaintiff.

James A. Brennan and Peter C. Karegeannes, Quarles & Brady, Milwaukee, WI, for defendant.

OPINION AND ORDER

CURRAN, District Judge.

This action was commenced by James J. May, doing business as Hawthorn Industries (May), against The Wheelabrator Corporation (Wheelabrator) claiming that the business arrangement between May and Wheelabrator was a dealership within the meaning of the Wisconsin Fair Dealership Law (WFDL) and that the termination of the relationship violated the law. Jurisdiction is premised on diversity.

On November 16, 1992, Wheelabrator moved for summary judgment. On January 19, 1993, while the court was in the midst of drafting its decision, having found that the Plaintiff had waived his right to respond under Local Rule 6, the Plaintiff did in fact file a response. The Defendant has asked the court to ignore this submission as untimely. I have, however, reviewed the Plaintiff's response to the motion and have concluded that it does not raise a genuine issue of material fact and that the Defendant is entitled to judgment as a matter of law. The court finds the following facts dispositive.

Prior to September 1988, James May was an employee of The Wheelabrator Corporation as a parts and equipment sales representative, a regional manager and an equipment specialist. In September 1988, May and Wheelabrator entered into an agreement by which May became a full-line distributor for Wheelabrator with a district encompassing Wisconsin, Minnesota, and designated counties in Michigan. Under this agreement, May was to sell four Wheelabrator products—abrasives, equipment, parts for Wheelabrator equipment and parts for other manufacturer's equipment. In July 1990, Wheelabrator sold all of its assets in the abrasive portion of its business to an unrelated corporation and completely withdrew from the abrasive market. On November 28, 1990, Wheelabrator notified May that he no longer had the right to represent Wheelabrator parts effective January 1, 1991. On June 28, 1991, Wheelabrator notified May that he no longer had the right to represent Wheela-

brator on equipment and parts for other manufacturer's equipment.

■ The court first notes that Wheelabrator's withdrawal from the abrasive market does not appear to be part of this action. The asset sale occurred in July 1990, and this action was not filed until November 1991, well outside the one year statute of limitations for commencing a WFDL action. *See* Wis.Stat. § 893.93(3)(b). Furthermore, the court believes that it is sufficiently established that a complete nondiscriminatory withdrawal of a product line is not actionable under the WFDL. *See, e.g., Lee Beverage Company, Inc. v. I.S.C. Wines of California, Inc.,* 623 F.Supp. 867 (E.D.Wis.1985); *St. Joseph Equipment v. Massey–Ferguson,* 546 F.Supp. 1245 (W.D.Wis.1982). The court is thus concerned with the issue of whether a genuine issue of material fact exists on whether May was a dealer within the meaning of the WFDL.

■ In its relationship with its customers May did not buy and resell Wheelabrator parts and equipment. He did not maintain an inventory of parts and equipment but rather he was paid a commission for each sale by Wheelabrator. He did not have the authority to commit Wheelabrator to the sale of parts and equipment but took orders which he then forwarded to Wheelabrator. All parts and equipment were shipped directly from Wheelabrator to the customer. May's financial investment in this relationship was minimal. He paid no fee in connection with becoming a distributor. He did not share advertising expenses nor was he required to maintain an inventory of parts and equipment. Wheelabrator bore the sole risk of loss as to sales made on credit. Other than attending two trade shows in Milwaukee and a trade show in Detroit, at which May represented all of the lines that he sold, he did not have any promotional expenses as to Wheelabrator. Other than a listing in the yellow pages mentioning Wheelabrator, May did not use the Wheelabrator name. The Hawthorne Industries stationery did not identify Wheelabrator but rather said its business was "representing manufacturers."

■ The remedial purpose and policy underlying the WFDL is to promote fair business relations between dealers and grantors and to protect dealers against unfair treatment by grantors who are in an inherently superior economic position with superior bargaining power. Wis.Stat. Section 135.025(2). A dealership is statutorily defined as "a contract or agreement, either express or implied, whether oral or written, between two or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease agreement or otherwise." Wis. Stat. Section 135.02(3).

The Wisconsin courts and the federal courts interpreting the WFDL have created a totality of circumstances test to determine whether a dealership exists. For example, in *Ziegler Co., Inc. v. Rexnord, Inc.,* 139 Wis.2d 593, 407 N.W.2d 873 (1987), the Supreme Court of Wisconsin in rejecting a mathematical definition identified two guideposts to determine whether a community of interest exists, which is one of the hallmarks of a dealership. First, the court found that the grantor and dealer must possess a "continuing financial interest" in their business relationship. *Id.* 407 N.W.2d at 878. "This requirement contemplates a shared financial interest in the operation of the dealership or the marketing of the good or service." *Id.* The second guidepost is "interdependence," which the court described as "shared goals and a cooperative effort more significant than in the typical vendor-vendee relationship." *Id.* at 879. The court then set forth a nonexclusive list of ten factors which could be considered in determining whether the grantor-dealer relationship exists. These factors include: how long the parties have dealt with each other; the extent and nature of the obligations imposed on the parties in the contract or agreement between them; what percentage of time or revenue the alleged dealer devotes to the alleged grantor's

products or services; what percentage of the gross proceeds or profits of the alleged dealer derives from the alleged grantor's products or services; the extent and nature of the alleged grantor's grant of territory to the alleged dealer; the extent and nature of the alleged dealer's uses of the alleged grantor's proprietary marks (such as trademarks or logos); the extent and nature of the alleged dealer's financial investment in inventory, facilities, and good will of the alleged dealership; the personnel which the alleged dealer devotes to the alleged dealership; how much the alleged dealer spends on advertising or promotional expenditures for the alleged grantor's products or services; the extent and nature of any supplementary services provided by the alleged dealer to consumers of the alleged grantor's products or services. *Id.* at 879–80.

The Seventh Circuit has suggested the following test:

> A retailer is a dealer only if it has made the kind of investments that would tempt an unscrupulous grantor to engage in opportunistic behavior—in other words, to exploit the fear of termination that naturally attends a dealer's investment and grantor-specific assets.

*Frieburg Farm Equipment Inc. v. Van Dale, Inc.*, 978 F.2d 395, 399 (7th Cir.1992), citing *Kenosha Liquor Co. v. Heublein, Inc.*, 895 F.2d 418, 419 (7th Cir.1990); *Moodie v. School Book Fairs, Inc.*, 889 F.2d 739, 742 (7th Cir.1989); *Moore v. Tandy Corp.*, 819 F.2d 820, 822–23 (7th Cir. 1987).

The court recognizes that May satisfies some of the *Ziegler* factors. The amount of time he devoted to promoting Wheelabrator equipment and parts and the percentage of gross profits realized from these products were both high. The business relationship in its pre-termination form lasted two years as to Wheelabrator parts and two and a half years as to Wheelabrator equipment and other parts. Finally, the geographical extent of the Plaintiff's territory was significant. On the other side of the ledger, however, May clearly did not have a significant financial invest-

ment in the Wheelabrator business. Although he claims that he had the right to purchase an inventory of Wheelabrator equipment and parts, he did not do so. As I have mentioned, he never bore the risk of loss as to sales on credit and other than the yellow pages listing he did not use the Wheelabrator name or mark. De minimus use of a trademark does not satisfy the WFDL. *John Maye Co. Inc. v. Nordson Corp.*, 959 F.2d 1402, 1409 (7th Cir.1992), citing *Moodie*, 889 F.2d at 743. Rather, a dealer exhibiting the interdependence and community of interest with the grantor and thus qualifying for protection under the WFDL must prominently use and display a grantor's logo. *Kornacki v. Norton Performance Plastics*, 956 F.2d 129, 134 (7th Cir.1992). It is clear from the record before the court that May was acting as a manufacturer's representative in its business and that as such he is not entitled to the protection of the Wisconsin Fair Dealership Law. Accordingly,

IT IS ORDERED that the Defendant's motion for summary judgment be and hereby IS GRANTED. The clerk is directed to enter final judgment in favor of the Defendant and against the Plaintiff.

Done and Ordered.