**Richard Warren Thomas SMITH, Plaintiff,**

v.

**RAINSOFT WATER CONDITIONING CO., an Illinois corporation, and Aquion Corporation, an Illinois corporation, Defendants.**

Civ. A. No. 92–C–1028.

United States District Court, E.D. Wisconsin.

April 21, 1994.

Christopher Johnson, Beck, Chaet, Loomis, Molony & Bamberger, S.C., Milwaukee, WI, Robert Corris, Kasdorf, Lewis & Swietlik, S.C., Milwaukee, WI, for plaintiff.

James Brennan, Quarles & Brady, Milwaukee, WI, Javier Rubinstein, Mayer, Brown & Platt, Chicago, IL, for defendants.

### ORDER

TERENCE T. EVANS, Chief Judge.

This is an action growing out of a contract, dated February 9, 1989, between Richard Warren Thomas Smith and RainSoft Water Conditioning Company. Under the contract Mr. Smith was to be a RainSoft regional manager. On September 30, 1991, Mr. Smith was notified that he was being terminated as RainSoft's regional manager for his territory in Wisconsin and Illinois. Cross-motions for summary judgment are pending.

RainSoft contends in its motion that Mr. Smith is not a dealer within the meaning of the Wisconsin Fair Dealership Law and that therefore the claim based on that statute must be dismissed; that his claim based on a breach of the covenant of good faith and fair dealing fails as a matter of law; and that count three, based on a breach of his contract, fails because, in fact, RainSoft did have "just cause" to terminate the contract. In his motion, Mr. Smith contends that a finding must be made in his favor on counts one and three, the WFDL claim and the contract claim, because RainSoft did not have just cause to terminate the contract.

Pursuant to rule 6.05 of the Local Rules for the Eastern District of Wisconsin, the parties have presented proposed finding of undisputed facts and have each responded to the facts presented by the other. The sub-missions reveal that there is, in fact, considerable disagreement about what some of the facts are—or what the interpretation of the facts should be. The following, however, appear to be undisputed.

Richard Warren Thomas Smith is a Wisconsin citizen who lives in Waterford, Wisconsin. RainSoft is an Illinois corporation with its principal place of business in Elk Grove Village, Illinois. It manufactures and distributes water treatment equipment. Aquion Corporation is an Illinois corporation with its principal place of business in Elk Grove Village, Illinois. It is a general partner of Aquion Partners Limited Partnership, which was created to be the exclusive sales and marketing company for RainSoft's products.

John R. Grayson is the founder and president of RainSoft. In 1990 the Aquion Corporation was set up as the marketing arm of RainSoft so that employees who had contributed to the success of RainSoft would be able to carry on the business if Mr. Grayson were no longer with the company. A portion of Aquion's stock is owned by RainSoft employees, a portion by dealers, and a portion by regional managers.

Charles Davidson Cole, Jr., the son of Mr. Grayson's long-time personal secretary, is the president of Aquion. Robert Ruhstorfer, who was a national sales manager for RainSoft, is the vice-president of Aquion.

From 1983 to 1989, Mr. Smith owned a RainSoft dealership in Union Grove, Wisconsin. Mr. Smith was offered the opportunity to become a regional manager for RainSoft in Wisconsin and Illinois. On February 9, 1989, Smith and RainSoft entered into RainSoft's standard regional manager agreement, which consisted of a two-page letter from Mr. Grayson to Mr. Smith, with a one-page attachment.

The letter refers to Mr. Smith as a "contractor" and covers the commissions he is to receive and his agreement not to contact RainSoft customers if he terminates his services and not to reveal trade secrets. The letter sets forth his duties as follows:

You will be responsible for the maintenance of existing assigned RainSoft deal-

ers, and the establishment of new dealers. You will be responsible for the sale of the full line of RainSoft equipment, at prices and discounts established by the factory. You will handle no other water conditioning lines.

New dealers will be subject to approval by the factory. All sales to dealers are to be made on the basis of cash with order, sight draft bill of lading, or C.O.D., or approved terms.

Finally the letter closes with the following statements:

This letter will constitute our only agreement, and will become effective as of the date of signed acceptance. It can be terminated by you at any time. It can be terminated by RainSoft at any time for just cause.

On September 30, 1991, Mr. Ruhstorfer telephoned Mr. Smith by telephone and told him that RainSoft was terminating him immediately as RainSoft's regional manager for Wisconsin and Illinois. Mr. Ruhstorfer told Mr. Smith that the company had decided to merge his region with another territory.

Prior to becoming regional manager, Mr. Smith had been a RainSoft dealer and had, like all other dealers, signed a standard dealer agreement. Among other things the agreement authorized the dealer to use RainSoft trade names and trademarks. It provided that the manufacturer will not sell RainSoft equipment to any other dealer in the area and will provide confidential procedures, etc. to the dealer. The dealer agreed not to sell products sold by a competitor of the manufacturer, to maintain minimum sales, and to attend seminars offered by the manufacturer. The agreement stated that "unless revoked for cause, the dealership herein granted shall continue indefinitely."

When Mr. Smith operated his dealership, he established a storefront office on Main Street in Union Grove, Wisconsin. He placed a RainSoft sign on his office and secured additional advertising, including listings in Racine and Kenosha County telephone directories. He hired a secretary and a plumber; later he hired telemarketers, commissioned salespeople, and a service person. At one point, he maintained five vehicles in connection with the dealership.

When Mr. Smith became a regional manager, he sold his dealership and assumed other duties, including aiding the dealers within the territory to increase sales, recruiting new dealers, and assisting dealers with customer service problems. Mr. Smith maintains that regional managers also were responsible for the sale of the full line of equipment. As regional manager, he did not, however, operate the same sort of business that he had when he was a dealer. A regional manager's compensation is based on commission on the purchases of RainSoft equipment by the dealers within the territory.

■ RainSoft contends in its motion for summary judgment that Mr. Smith is not a "dealer" within the meaning of the Wisconsin Fair Dealership Law, Chapter 135 Wisconsin Statutes, and that therefore the claim pursuant to that statute must be dismissed.

"Dealer" is a protean concept. Putative dealers keep stretching the definition to cover their, seemingly always unique, situations. Unfortunately, the business world does not neatly divide into dealers and "not dealers," and courts are required to try to make sense of the boundary between the two.

The Wisconsin Supreme Court has stated that a dealership exists if the following elements are satisfied:

1. a contract or agreement between two or more persons;
2. by which a person is granted
   a. the right to sell goods or services;
   b. the right to distribute goods or services; or
   c. the right to use a trade name, trademark, service mark, logotype, advertising or other commercial symbol, and
3. in which there is a community of interest in the business of
   a. offering goods or services;
   b. selling goods or services; or
   c. distributing goods or services at wholesale, retail, by lease, agreement or otherwise.

*Ziegler Co., Inc. v. Rexnord, Inc.,* 139 Wis.2d 593, 600, 407 N.W.2d 873 (1987). There is no

question that Mr. Smith was a dealer before he became a regional manager.

As regional manager, he arguably, on paper, retains some of the trappings of a dealer. He has an agreement with RainSoft. The language of the contract gives him the right to sell RainSoft products:

> You will be responsible for the sale of the full line of RainSoft equipment, at prices and discounts established by the factory.

However, RainSoft argues that when compared with the dealership agreement, this provision clearly did not grant Mr. Smith the right to sell the products himself, but rather to oversee the sales performance of the dealers within his region. RainSoft contends, in fact, that Mr. Smith did not sell the products. Courts have held that even if a person is granted a right to sell a product, he is, nevertheless, not a dealer unless he, in fact, sells the product. *May v. Wheelabrator Corp.*, 811 F.Supp. 416 (E.D.Wis.1993).

In addition, Mr. Smith's use of the RainSoft trademark was also limited. RainSoft told him not to use the trademark on his letterhead. He did, however, use the mark on business cards, which identified him as a RainSoft representative and gave a separate address for the RainSoft factory. He used the mark on promotional materials shown to prospective dealers, in newspaper ads placed three or four times per year for recruitment of prospective dealers, and on a jacket he wore when visiting dealers. RainSoft's reason for refusing to let him use the mark on his letterhead was that it did not want to be subject to corporate income tax in the state of Wisconsin if the company was found to have an office within the state. Mr. Smith points out, however, that dealers did use the trademark in the state, and that RainSoft's concern "probably resulted from concern that the state would question the independent contractor status developed by RainSoft."

The next element required for a dealership to exist is that a "community of interest" exist between the grantor and the dealer. In *Ziegler*, the court tried to identify what that term meant. It involves shared goals and a continuing financial interest great enough for termination to pose a threat to the economic health of the putative dealer. It includes:

how long the parties have dealt with each other; the extent and nature of the obligations imposed on the parties in the contract or agreement between them; what percentage of time or revenue the alleged dealer devotes to the alleged grantor's products or services; what percentage of the gross proceeds or profits of the alleged dealer derives from the alleged grantor's products or services; the extent and nature of the alleged grantor's grant of territory to the alleged dealer; the extent and nature of the alleged dealer's uses of the alleged grantor's proprietary marks (such as trademarks or logos); the extent and nature of the alleged dealer's financial investment in inventory, facilities, and good will of the alleged dealership; the personnel which the alleged dealer devotes to the alleged dealership; how much the alleged dealer spends on advertising or promotional expenditures for the alleged grantor's products or services; the extent and nature of any supplementary services provided by the alleged dealer to consumers of the alleged grantor's products or services.

*Ziegler*, 139 Wis.2d at 606, 407 N.W.2d 873.

Mr. Smith, of course, has a financial interest wrapped up in RainSoft products. It was his job to help dealers sell the products and to find new dealers of the products. That sort of economic interest is the type most often found in employees even though Mr. Smith, under the terms of the contract, was an independent contractor, not an employee. It is not the type of financial interest found in dealerships. In dealerships, the dealer has a significant investment in inventory, facilities, and good will—the sort of investment Mr. Smith had when he was a dealer.

As a regional manager, Mr. Smith became something more clearly analogous with manufacturer's representatives. He did not maintain an inventory of RainSoft products. His remuneration was from commissions, and in this case, not even commissions on his own sales, but rather on the sales of the dealers within his territory. As defined in *John Maye Co., Inc. v. Nordson Corp.*, 959 F.2d 1402, 1408 (7th Cir.1992), a manufacturer's representative is

an independent contractor who solicits orders for a manufacturer's product from potential customers and is paid a commission on resulting sales.

Mr. Smith was not a dealer within the meaning of the WFDL.

Two other contract claims exist in the lawsuit: a claim that RainSoft breached the regional manager agreement when it terminated the agreement without "just cause" and a claim that the termination of the agreement breached the implied covenant of good faith and fair dealing.

RainSoft has moved for summary judgment dismissing both of the claims; Mr. Smith has filed a motion for partial summary judgment seeking a finding that the contract was terminated without just cause, as required by both the contract and the WFDL. A choice-of-law issue is raised somewhat obliquely in the briefs. However, there seems to be no real disagreement that Wisconsin, not Illinois, law applies on these issues. I will apply Wisconsin law.

■ Because the WFDL claim has been dismissed, the remaining issues involve interpretation of the contract, not of the statute. Mr. Smith seeks to graft the requirements of the WFDL onto the contract claim. He contends that for RainSoft to terminate an agreement for "just cause," it must give notice and a time to cure. Those are statutory requirements under the WFDL. In addition, Mr. Smith argues that in order for an economic reason to constitute "just cause" for termination of a contract, it must be "essential, reasonable and non-discriminatory," as required under the WFDL in *Ziegler Co., Inc. v. Rexnord, Inc.,* 147 Wis.2d 308, 433 N.W.2d 8 (1988) (Ziegler II). That requirement also was developed in interpreting the WFDL. Principles developed in interpreting the WFDL might be helpful by way of analogy to this case, but they are not controlling.

RainSoft seems to claim it had just cause to terminate the agreement for two unrelated reasons: (1) for business reasons—it was restructuring its territories and cutting down on the number of regional managers, and (2) Mr. Smith's performance was not adequate.

The claim based on the issue of "just cause" is intertwined with the claim based on the implied covenant of good faith and fair dealing. Mr. Smith contends that the covenant of good faith and fair dealing was breached by RainSoft's failing to approve prospective dealers whom Mr. Smith had recruited and by the company's failing to enforce the terms of its dealer agreement with dealers located within Smith's territory. These contentions look like justifications for any perceived failure in Mr. Smith's performance. In other words, if RainSoft was dealing with him unfairly, then they caused his alleged poor performance.

■ Under Wisconsin law there can be no breach of the implied covenant of good faith and fair dealing based on acts which are specifically authorized in the agreement. *Super Valu Stores v. D–Mart,* 146 Wis.2d 568, 431 N.W.2d 721 (1988). The regional manager agreement specifically authorizes that "[n]ew dealers will be subject to approval by the factory." Furthermore, there is nothing in the agreement which requires the company to enforce the dealer agreements. The claim based on the implied covenant of good faith and fair dealing is dismissed.

■ The real contract issue in this case is whether there was "just cause" for terminating the contract. RainSoft argues that a restructuring of its territories and the elimination of regional manager positions is, as a matter of law, just cause. The restructuring was done all over the country. Other regional managers were terminated. Alternatively, RainSoft argues that Mr. Smith's performance gave the company just cause to terminate the agreement. This issue, the company says, involves genuine issues of material fact, precluding summary judgment. Mr. Smith argues that summary judgment should be granted on this issue in his favor; as I stated above, however, he relies heavily on concepts found in the WFDL.

In this context, I find that just cause involves a factual issue, which cannot be resolved on summary judgment. The case will proceed to trial on the issue of whether RainSoft breached the contract by terminating it without just cause.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that defendant's motion is GRANTED IN PART—the claims based on the Wisconsin Fair Dealership Law and the implied covenant of good faith and fair dealing are DISMISSED—and DENIED IN PART. A conference call will be held on May 17, 1994, at 9 a.m. to set a date for trial on the issue of just cause for termination of the contract.